# Illinois Official Reports

## Appellate Court

***People v. Heller*, 2017 IL App (4th) 140658**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALAN W. HELLER, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-14-0658 |
| Filed | January 13, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Schuyler County, No. 14-CF-2; the Hon. Alesia A. McMillen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Jessica D. Fortier, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>David J. Robinson and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of Chicago, for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Holder White and Pope concurred in the judgment and opinion. |

**OPINION**

¶ 1      In January 2014, the State charged defendant, Alan W. Heller, with domestic battery and aggravated domestic battery, alleging that he grabbed and strangled his girlfriend, Tracy Shults. Prior to trial, the State filed a motion *in limine* pursuant to section 115-7.4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.4 (West 2014)), seeking to admit evidence of prior domestic batteries committed by defendant. The trial court granted the motion.

¶ 2      At trial, Shults recanted the statements she made to police that defendant had hit and choked her. The State impeached her testimony with a recorded statement she made after the January 11, 2014, incident. In addition, the State introduced other-crimes testimony of defendant's ex-wife, Barbara Heller, detailing a domestic battery allegedly committed by defendant against Barbara in 2010. The jury found defendant guilty of domestic battery but not guilty of aggravated domestic battery. The trial court sentenced defendant to 4½ years in prison and imposed several fines and fees.

¶ 3      Defendant appeals, raising the following arguments: (1) the evidence was insufficient to prove defendant guilty beyond a reasonable doubt of domestic battery, (2) the trial court abused its discretion by admitting other-crimes evidence, and (3) various errors occurred concerning the fines and fees imposed. We disagree and affirm.

¶ 4                       I. BACKGROUND

¶ 5                       A. The Charges

¶ 6      In January 2014, the State charged defendant with unlawful possession of methamphetamine (720 ILCS 646/60(a), (b)(1) (West 2014)), domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2014)) (a Class 4 felony, based on prior convictions), and aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2014)) (a Class 2 felony). (The State later dismissed the methamphetamine charge.) The State alleged that defendant grabbed Shults by the throat.

¶ 7          B. The State's Section 115-7.4 Motion *in Limine*

¶ 8      Later that month, the State filed a motion *in limine* pursuant to section 115-7.4 of the Code (725 ILCS 5/115-7.4 (West 2014)), seeking to introduce Barbara's testimony of prior domestic batteries committed by defendant. In May 2014, the trial court conducted a hearing on that motion, and Barbara testified that she was defendant's ex-wife. They married in 2009, separated in 2010, and dissolved their marriage three months before the hearing. On January 24, 2010, Barbara and defendant had agreed to get divorced and were no longer living together. That evening, Barbara was sleeping on her living room couch with her three-year-old son when she awakened and discovered defendant on top of her, punching her in the face approximately 10 times. Barbara testified that defendant threatened to "slit my throat." He also told her "that nobody feels sorry for me, nobody was going to make a fool out of him, and I deserved it." After attacking Barbara, defendant got up and left. Barbara called the police. The State then made a proffer of what Shults would testify to at trial about the charged offenses.

¶ 9 Following arguments, the trial court ruled that Barbara's testimony as to the prior domestic battery committed by defendant was admissible pursuant to section 115-7.4 of the Code. In reaching that decision, the court explained, "I find those circumstances very, very similar, and I really think they're the reason that the [l]egislature created this statute." The court went on, "Now, to say it was a choke instead of a hit to the face, that doesn't make this a different circumstance."

¶ 10                                  C. The Trial
¶ 11 In August 2014, the trial court conducted a jury trial on the remaining charges of domestic battery and aggravated domestic battery.

¶ 12                        1. *The Jury Instruction Conference*
¶ 13 Prior to trial, the parties agreed that the following jury instruction—based on Illinois Pattern Jury Instructions, Criminal, No. 3.14 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 3.14)—should be given to the jury concerning the other-crimes testimony of Barbara:

> "Evidence has been received that the defendant has been involved in conduct other than that charged in the information. This evidence has been received on the issues of the factual similarity and proximity in time and may be considered by you only for that limited purpose. It is for you to determine whether the defendant was involved in that conduct, and, if so, what weight should be given to this evidence on the issues of factual similarity and proximity in time."

Defendant continued to object to Barbara's other-crimes evidence being admitted. However, he agreed that if the court did admit that evidence, the aforementioned jury instruction should be given. The parties likewise agreed to have the court give the instruction immediately after Barbara's testimony and again before jury deliberations.

¶ 14                            2. *Opening Statements*
¶ 15 During its opening statement, the State said the following about the expected testimony of Barbara:

> "You are also going to hear from one other person, Barb Heller. Barb Heller is, or Barb Sheeley as she may be known, is the ex-wife of the defendant ***. She is going to testify about a similar event several years prior in January of 2010 while her [*sic*] and Mr. Heller, the defendant, were going through a divorce. He returned to the home in which they resided and, while she was sleeping on the couch, got on top of her and commenced striking her in the face, all with her son present."

¶ 16                            3. *The State's Evidence*
¶ 17 Shults testified that defendant was her fiancé at the time of trial and that she had been in a relationship with him for the past year, including January 11, 2014. Shults testified further that on January 11, 2014, she was living with her daughter and defendant in Rushville, Illinois. That night, she and defendant had an argument about a message Shults received on her cell phone from a former romantic partner. Defendant got upset, "thinking that I was messing around on him." Defendant walked out of the home, and Shults followed after him, trying to explain the message. Shults eventually returned to the home, and defendant

followed. They continued arguing inside the home. At some point, Shults called the police because she wanted defendant to leave. Shults testified that at no time that night did the argument turn physical.

¶ 18 Shults testified further that she remembered making a statement to police the evening of January 11 and participating in a recorded interview with police on January 28, 2014. However, Shults testified that she did not remember what she had told the officers on those two occasions. Specifically, she testified that she did not remember saying that defendant had struck her in the face or that defendant had choked her by placing his hands around her neck, impeding her breathing and nearly causing her to lose consciousness.

¶ 19 In response, the State completed the impeachment of Shults by playing the recorded interview in open court. On the recording, Shults was seen and heard telling police that defendant sat on top of her while she was on the bed and choked her twice—once using his hands and once using his forearm. Shults also told police that defendant punched her in the chest and jaw. Later, during direct examination, Shults testified that she told police those things only because "[t]hey kept asking me over and over, and I just finally told them what they wanted to hear so they would stop."

¶ 20 In addition, the State introduced photographs of Shults taken the night of January 11, 2014. Shults testified that the mark on her neck shown in the photographs occurred because "I break out in hives when I get nervous or upset." Shults testified further that the marks came from consensual sex with defendant earlier on January 11. Shults explained that between January 28, 2014, and the date of trial, she had called the State's Attorney twice to recant her recorded statement.

¶ 21 Rushville police officer Justin Stinnett testified that on January 11, 2014, he responded to a 9-1-1 call from Shults. She and defendant were in their residence when Stinnett arrived. Stinnett noticed red marks on Shults's throat and chest. Stinnett spoke with defendant, who gave Stinnett an explanation of the night's events similar to Shults's trial testimony.

¶ 22 Barbara testified that on January 4, 2010, she was married to defendant but was no longer living with him because they had decided to divorce. That evening, she was asleep with her three-year-old son on the living room couch of her home. She was awakened by defendant hitting her in the face approximately 10 times. Defendant told Barbara "[t]hat nobody was going to make a fool out of him and that he would, he was going to kill me." Barbara's son was in the room when the attack occurred. During its examination of Barbara, the State introduced three photographs of Barbara's face taken while she was in the hospital after the alleged attack. Those photographs allegedly showed injuries to Barbara caused by defendant. After Barbara's testimony, the court instructed the jury as the parties agreed.

¶ 23 *4. Closing Arguments*

¶ 24 During closing arguments, the State referred to Barbara's testimony and highlighted the similarities between the incident described by her and that described by Shults in her January 28 recorded statement.

¶ 25 After closing arguments, the trial court again instructed the jury as the parties had agreed. As to whether the three photographic exhibits of Barbara should be sent back with the jury during deliberations, defendant stated, "I have no problem with the pictures going back, [Y]our Honor." The court ordered the clerk to send the three photographs back with the jury.

¶ 26      The jury found defendant guilty of domestic battery and not guilty of aggravated domestic battery.

¶ 27      <center>D. Sentencing</center>

¶ 28      After a July 2014 sentencing hearing, the trial court sentenced defendant to 4½ years in prison. In addition, the court imposed $382 in fines, including a $100 "Clerk Fee" (705 ILCS 105/27.1a (West 2014)); $2 "SAO Auto" assessment (55 ILCS 5/4-2002 (West 2014)); $15 "Automation" assessment (705 ILCS 105/27.3a(1) (West 2014)); $25 "Sheriff Fee" (55 ILCS 5/4-5001 (West 2014)); and $10 "Probation Op" assessment (705 ILCS 105/27.3a(1.1) (West 2014)).

¶ 29      This appeal followed.

¶ 30      <center>II. ANALYSIS</center>

¶ 31      Defendant raises the following arguments: (1) the evidence was insufficient to prove defendant guilty beyond a reasonable doubt of domestic battery, (2) the trial court abused its discretion by admitting other-crimes evidence, and (3) various errors occurred concerning the fines and fees imposed.

¶ 32      <center>A. Sufficiency of the Evidence</center>

¶ 33      Defendant argues that the evidence was insufficient to prove him guilty beyond a reasonable doubt of domestic battery because the only direct evidence was the statement given by Shults, which was "untrustworthy" because she later recanted it. Defendant further asserts that the other evidence presented of his guilt was the "improper, unduly prejudicial, and suspicious testimony" of Barbara. We disagree with defendant's argument.

¶ 34      <center>1. *Case Law and the Standard of Review*</center>

¶ 35      Due process requires that the State prove beyond a reasonable doubt the existence of every element of the charged offense. *People v. Lucas*, 231 Ill. 2d 169, 178, 897 N.E.2d 778, 784 (2008). The "testimony of a single witness is sufficient to convict if positive and credible." (Emphasis omitted.) *People v. Smith*, 185 Ill. 2d 532, 545, 708 N.E.2d 365, 371 (1999). Even a recanted statement alone can be sufficient. *People v. Thomas*, 354 Ill. App. 3d 868, 878, 821 N.E.2d 628, 637 (2004). "It is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts." *People v. Bradford*, 2016 IL 118674, ¶ 12, 50 N.E.3d 1112. In the context of a recanted statement, the trier of fact has the responsibility "to weigh the statement, weigh the disavowal and determine which is to be believed." *People v. Armstrong*, 2013 IL App (3d) 110388, ¶ 27, 987 N.E.2d 1040. "[A] reviewing court will not substitute its judgment for the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *Bradford*, 2016 IL 118674, ¶ 12, 50 N.E.3d 1112.

¶ 36      When reviewing a challenge to the sufficiency of the evidence, we ask whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114, 871 N.E.2d 728, 740 (2007).

¶ 37                                    2. *This Case*

¶ 38        Defendant focuses his argument on the unreliability of Shults as a witness, referring to her as "inherently untrustworthy." However, as we explained earlier, the trier of fact, not the appellate court, is in a better position to determine the credibility of witnesses, and we will not substitute our judgment for the jury's on that matter. *Id.* In this case, the jury heard both the recorded statement given by Shults after the alleged incident and her testimony at trial that she (1) did not remember making the statement and (2) was pressured into telling the police what they wanted to hear. The jury was in the best position to determine which of Shults's conflicting statements was more credible. Here, the jury obviously found that her statements on the night of the incident and during a police interview were more believable than her testimony at trial. That conclusion was within the province of the jury, was entirely reasonable, and we will not reweigh the jury's credibility determinations on appeal.

¶ 39        In addition, the testimony of Barbara about defendant's prior domestic battery, admitted pursuant to section 115-7.4 of the Code, could "be considered for its bearing on any matter to which it is relevant." 725 ILCS 5/115-7.4 (West 2014). The term "any matter" within section 115-7.4 includes using the other-crimes evidence to establish defendant's propensity to commit domestic battery. *People v. Dabbs*, 239 Ill. 2d 277, 284, 940 N.E.2d 1088, 1093 (2010). Considering Shults's statements to police, along with the testimony of Barbara, we conclude that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of domestic battery.

¶ 40                                 B. Other-Crimes Evidence

¶ 41        Defendant raises the following three arguments related to the introduction of other-crimes evidence pursuant to section 115-7.4 of the Code (725 ILCS 5/115-7.4 (West 2014)): (1) the trial court abused its discretion by admitting the other-crimes evidence, (2) the State's excessive focus at trial on the other-crimes evidence prejudiced defendant, and (3) the jury received an improper limiting instruction. We disagree with all three contentions.

¶ 42                       1. *Statutory Language and the Standard of Review*

¶ 43        Section 115-7.4 of the Code (725 ILCS 5/115-7.4 (West 2014)) provides the following:

        "(a) In a criminal prosecution in which the defendant is accused of an offense of domestic violence ***, evidence of the defendant's commission of another offense or offenses of domestic violence is admissible, and may be considered for its bearing on any matter to which it is relevant.

        (b) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:

                (1) the proximity in time to the charged or predicate offense;

                (2) the degree of factual similarity to the charged or predicate offense; or

                (3) other relevant facts and circumstances."

¶ 44        The other-crimes evidence may be introduced for any relevant purpose, including to establish the defendant's propensity to commit the charged offense. *Dabbs*, 239 Ill. 2d at 284, 940 N.E.2d at 1093. As required by section 115-7.4, the trial court must—as with any evidence—balance the probative value of the proffered evidence against its prejudicial effect. 725 ILCS 5/115-7.4(b) (West 2014). In conducting that balancing test, the court should

consider, in particular, the other crime's (1) proximity in time and (2) degree of factual similarity to the charged offense, in addition to any other relevant facts and circumstances. *Id.* To be admissible under section 115-7.4, the other-crimes evidence must bear merely "general similarity" to the charged offense. *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 43, 23 N.E.3d 430.

¶ 45    "The admissibility of other-crimes evidence is within the sound discretion of the trial court, and its decision on the matter will not be disturbed absent a clear abuse of discretion." *Dabbs*, 239 Ill. 2d at 284, 940 N.E.2d at 1093. A court abuses its discretion when its decision is "arbitrary, fanciful, unreasonable, or when no reasonable person would adopt the trial court's view." *People v. Ward*, 2011 IL 108690, ¶ 21, 952 N.E.2d 601.

¶ 46                    2. *Whether the Other-Crimes Evidence Was Admissible*
                          *Pursuant to Section 115-7.4*

¶ 47    We conclude that the trial court did not abuse its discretion by admitting the other-crimes evidence.

¶ 48    In this case, the other crime and the charged offense were similar enough to support admitting the other-crimes evidence. During both alleged offenses, defendant positioned himself on top of his victim and struck her on the face. In addition, both offenses were a reaction by defendant to the prospect of another romantic partner being involved with the victims, who had both been romantic partners with defendant. Both attacks occurred in the home of the victim.

¶ 49    The differences between the offenses highlighted by defendant are not so significant as to bar the other-crimes evidence. Defendant points to the following differences to support his argument that the other-crimes evidence should not have been admitted: the charged offenses involved choking instead of punching; defendant was married to Barbara but merely dating Shults; the incident with Shults resulted from a long argument, while the attack on Barbara was spontaneous; a child was present during the attack on Barbara, but nobody witnessed the incident with Shults.

¶ 50    Those slight differences actually do more to show how *similar* the two incidents were. The fact that defendant was married to Barbara (although separated and living alone) but merely dating Shults is not a significant difference. In both situations, defendant was engaged in a long-term romantic relationship with his victim. Defendant's acts of violence both resulted from the possibility that his victims were involved romantically with another person. During both incidents, defendant responded to that perceived threat by violently assaulting his victim in her home. Those key facts established a level of similarity between the offenses that is not undone by the minor differences noted by defendant.

¶ 51    The trial court did not abuse its discretion by admitting the other-crimes evidence.

¶ 52                    3. *Whether the State's Focus on the Other-Crimes Evidence*
                          *During Trial Caused Prejudice to Defendant*

¶ 53    Defendant argues that even if the other-crimes evidence was admissible, the trial court admitted it in too much detail and focused on it at trial to such an extent that defendant was prejudiced. We disagree.

¶ 54    When admitting other-crimes evidence pursuant to section 115-7.3, the trial court "must admit only so much evidence as is reasonably necessary to establish propensity." *People v. Smith*, 406 Ill. App. 3d 747, 756, 941 N.E.2d 419, 427 (2010). That requirement stems at least in part from the court's "responsibility to control the presentation of evidence in a manner that minimizes juror confusion and promotes judicial economy." *Id.* "Cumulative evidence of other conduct can overpersuade the jury to convict the defendant as a bad person, rather than because he was guilty of the charged crime." *People v. Brown*, 319 Ill. App. 3d 89, 96, 745 N.E.2d 173, 181 (2001) (evidence was unduly cumulative where the State put on 12 witnesses, 6 of whom testified about other-crimes evidence). However, "it will often be difficult to determine how much is enough and how much is too much." *Smith*, 406 Ill. App. 3d at 756, 941 N.E.2d at 427. The other-crimes evidence must not become a "focal point" of the trial, nor should the trial become a "mini-trial" of the uncharged offense. *Id.* at 755, 941 N.E.2d at 426.

¶ 55    Again, the trial court's decision to admit or deny other-crimes evidence is reviewed for an abuse of discretion. *Id.* " '[R]easonable minds [can] differ' about whether such evidence is admissible without requiring reversal under the abuse of discretion standard." *People v. Donoho*, 204 Ill. 2d 159, 186, 788 N.E.2d 707, 723 (2003) (quoting *People v. Illgen*, 145 Ill. 2d 353, 375-76, 583 N.E.2d 515, 525 (1991)).

¶ 56    In this case, the trial court admitted Barbara's testimony about a prior instance of domestic violence perpetrated by defendant. Specifically, Barbara testified that defendant hit her in the face approximately 10 times after defendant suspected that she was romantically involved with another man. In its opening and closing arguments, the State referenced Barbara's testimony and encouraged the jury to rely on it and find defendant guilty.

¶ 57    We conclude that the trial court did not abuse its discretion by admitting this evidence and allowing the State to address it in the State's opening and closing arguments. The other-crimes evidence in this case was limited to the facts necessary for the jury to understand what happened to Barbara and to place the attack on her within the context of her relationship to defendant. We fail to see how the State's referring to Barbara's testimony during opening and closing arguments was out of the ordinary. A competent State's Attorney would of course discuss all the relevant evidence with the jury during argument. A State's Attorney should do so for any evidence, whether admitted pursuant to section 115-7.4 or otherwise. Further, the State did not focus unduly on the other-crimes evidence, such that the trial became a "mini-trial." Instead, the State properly focused its case on both Barbara's other-crimes testimony and the impeachment of Shults with her prior inconsistent statements. The trial court's decision to admit the evidence was not arbitrary, fanciful, or unreasonable.

¶ 58    Nor was it an error for the court to allow the three photographs of Barbara to be sent back with the jury during deliberations. First of all, defendant acquiesced in that decision, stating "I have no problem with the pictures going back." After acquiescing in that action, defendant may not claim on appeal that such action was error. *In re Marriage of Sobol*, 342 Ill. App. 3d 623, 630, 796 N.E.2d 183, 188 (2003) ("A party forfeits his right to complain of an error to which he consented."). In addition, the case defendant cites in support of his claim—*People v. Thigpen*, 306 Ill. App. 3d 29, 38, 713 N.E.2d 633, 640 (1999)—is inapposite to this case. In *Thigpen*, the court sent back with the jury a photograph of two dead bodies—allegedly resulting from defendant's other crimes—under the guise that the picture was relevant to corroborate a witness's testimony about what clothes those two other-crimes victims were

wearing. On appeal, the First District determined that the photograph "was irrelevant." *Id.* The facts of *Thigpen* are a far cry from this case, where the photographs were not nearly as inflammatory, were highly relevant, and were sent back only upon defendant's explicit acquiescence.

¶ 59    The trial court did not abuse its discretion by admitting the other-crimes evidence and sending the photographs of Barbara's injuries to the jury.

¶ 60                    4. *Whether the Jury Received an Improper*
                            *Limiting Instruction*

¶ 61    Defendant argues that the jury was given an improper limiting instruction concerning the other-crimes evidence.

¶ 62    In this case, the jury was given the following instruction:

> "Evidence has been received that the defendant has been involved in conduct other than that charged in the information.
>
> This evidence has been received on the issues of the factual similarity and proximity in time and may be considered by you only for that limited purpose.
>
> It is for you to determine whether the defendant was involved in that conduct and, if so, what weight should be given to this evidence on the issues of factual similarity and proximity in time."

¶ 63    That above instruction was modeled on IPI Criminal 4th No. 3.14, which itself provided the following:

> "[1] Evidence has been received that the defendant[s] [ (has) (have) ] been involved in [ (an offense) (offenses) (conduct) ] other than [ (that) (those) ] charged in the [ (indictment) (information) (complaint) ].
>
> [2] This evidence has been received on the issue[s] of the [ (defendant's) (defendants') ] [ (identification) (presence) (intent) (motive) (design) (knowledge) (___) ] and may be considered by you only for that limited purpose.
>
> [3] It is for you to determine [whether the defendant[s] [ (was) (were) ] involved in [ (that) (those) ] [ (offense) (offenses) (conduct) and, if so,] what weight should be given to this evidence on the issue[s] of _____." IPI Criminal 4th No. 3.14.

¶ 64    The parties agreed to the instruction given in this case after the trial court rejected the State's first proposed instruction. That first proposal asserted that the other-crimes evidence could be considered by the jury to show defendant's propensity to commit domestic battery. The court rejected that proposed instruction, stating, "It cannot be used to show propensity."

¶ 65    In the interest of edification, we reiterate that other-crimes evidence admitted pursuant to section 115-7.4 of the Code (725 ILCS 5/115-7.4 (West 2014)) may be considered by the jury for any relevant matter, including the defendant's propensity to commit the charged crime. *Dabbs*, 239 Ill. 2d at 284, 940 N.E.2d at 1093. A recent opinion from the First District illustrates an example of how to adapt IPI Criminal 4th No. 3.14 to instruct the jury on the proper use of other-crimes evidence admitted pursuant to either section 115-7.4 or section 115-7.3 of the Code. In *People v. Banks*, 2016 IL App (1st) 131009, ¶ 116, the trial court gave the jury the following instruction concerning other-crimes testimony admitted pursuant to section 115-7.3 of the Code:

"Evidence has been received that the Defendant has been involved in an offense other than those charged in the indictment. This evidence has been received on the issue of the Defendant's propensity and may be considered by you only for that limited purpose. It is for you to determine what weight should be given to this evidence on the issue of propensity."

¶ 66    In this case, the jury instruction informed the jury that the other-crimes evidence could be considered only "on the issues of the factual similarity and proximity in time." That instruction was incorrect. The issues of factual similarity and proximity in time are to be considered *by the trial court* when determining whether the other-crimes evidence should be admitted. Once admitted, the evidence may be used by the jury for "any relevant matter." To say that the evidence may be used by the jury only on the issues of factual similarity and proximity in time confuses the role of the jury with that of the trial court.

¶ 67    Despite the confusing wording of the jury instruction in this case, "a defendant forfeits review of any supposed jury instruction error if he does not object to the instruction or offer an alternative at trial and does not raise the issue in a posttrial motion." *People v. Downs*, 2015 IL 117934, ¶ 13. In this case, defendant went further than merely forfeiting review. Instead, he affirmatively acquiesced to the limiting instruction and therefore cannot claim on appeal that the trial court committed error by giving the instruction. See *Stephens v. Taylor*, 207 Ill. 2d 216, 222, 797 N.E.2d 679, 682 (2003) (party cannot claim error when it induced or acquiesced with the trial court's mistake); *Sobol*, 342 Ill. App. 3d at 630, 796 N.E.2d at 188 ("A party forfeits his right to complain of an error to which he consented.").

¶ 68    Nor will we, as defendant urges, reach this issue under the rubric of ineffective assistance of counsel. In *People v. Veach*, 2016 IL App (4th) 130888, ¶¶ 71-87, 50 N.E.3d 87, this court recently explained that direct appeals asserting claims of ineffective assistance of counsel fall into one of the three following categories: (1) Category A cases, which we decline to address on direct appeal because the trial record does not contain the facts necessary to decide the issue; (2) Category B cases, which we address on direct appeal because the claim of ineffective assistance is clearly groundless; and (3) Category C cases, which we address on direct appeal because trial counsel's errors were so egregious. We conclude that this case falls into Category A. The trial record does not disclose what conversations, if any, occurred between counsel and defendant concerning the jury instruction, or what defense counsel's thinking was regarding the instruction at issue. Defendant's claim is therefore more conducive to a collateral proceeding.

¶ 69                              C. Fines and Fees

¶ 70    Defendant raises the following two arguments concerning fines and fees: (1) defendant is entitled to additional $5-per-day credit, and (2) the trial court improperly imposed the "Clerk Fee," which was not applicable to defendant's conviction. We disagree.

¶ 71                          1. *The $5-Per-Day Credit*

¶ 72    A defendant incarcerated for a bailable offense is entitled to a $5-per-day credit toward his fines for each day spent in presentence custody. 725 ILCS 5/110-14 (West 2014).

¶ 73    The trial court determined that defendant was entitled to a $300 credit toward his fines for time spent in presentence custody, which defendant does not contest. Instead, defendant

argues that the court failed to apply that credit toward certain fines because the court incorrectly determined that those fines were instead fees. We disagree.

¶ 74     The $2 State's Attorney automation fee (55 ILCS 5/4-2002(a) (West 2014)) is a fee. *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 115, 55 N.E.3d 117. The $15 circuit clerk's automation and document storage fee is a fee (*People v. Tolliver*, 363 Ill. App. 3d 94, 97, 842 N.E.2d 1173, 1176 (2006)), as is the $25 sheriff's court services fee (*id.*). Finally, the $10 probation operations fee is a fee where the probation office conducted the defendant's presentence investigation, which the probation department did in this case. *People v. Rogers*, 2014 IL App (4th) 121088, ¶¶ 37-38, 13 N.E.3d 1280. Defendant was not entitled to $5-per-day credit toward those assessments.

¶ 75                              2. *The $100 "Clerk Fee"*

¶ 76     Section 27.1a of the Clerk of Courts Act (705 ILCS 105/27.1a (West 2014)) provides the fee schedule "of the clerks of the circuit court in all counties having a population of not more than 500,000 inhabitants." Schulyer County is a county having a population of not more than 500,000 inhabitants. Therefore, the "Clerk Fee" imposed in this case was authorized. The title of section 27.1a—"Fees; counties over 180,000 but not more than 500,000" (*id.*)—is inapposite. The statute no longer contains the requirement that the county have a population greater than 180,000. The trial court did not err by imposing the "Clerk Fee."

¶ 77                              III. CONCLUSION

¶ 78     For the foregoing reasons, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002 (West 2014).

¶ 79     Affirmed.