2020 IL App (2d) 170978-U
No. 2-17-0978
Order entered September 28, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-437 |
| MAX A. HERNANDEZ, | ) ) | Honorable Philip G. Montgomery, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justice Hudson concurred in the judgment.
Justice McLaren concurred in part and dissented in part.

**ORDER**

¶ 1    *Held*:   The Appellate Court affirmed the judgment of the trial court. The trial court did not abuse its discretion in admitting a 16-year-old domestic battery conviction where it was sufficiently credible and probative, being factually similar to the domestic battery charged; the defendant was not denied effective assistance of counsel for failure to object to other-crimes evidence involving his niece where the defendant failed to establish prejudice; the State proved the defendant guilty beyond a reasonable doubt of making physical contact of an insulting or provoking nature where the evidence showed that the defendant angrily pulled a cord that was wrapped around his wife's arm, causing a friction burn; the trial court did not commit error by sentencing the defendant to an extended-term sentence for a Class 4 unlawful restraint conviction.

¶ 2    A jury found defendant, Max A. Hernandez, guilty of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2016)) and unlawful restraint (720 ILCS 5/10-3(a) (West 2016)). The trial court sentenced defendant to two concurrent terms of six years in prison. In this appeal, defendant argues that (1) the State failed to prove him guilty beyond a reasonable doubt of domestic battery because there was no evidence that he knowingly made physical contact of an insulting or provoking nature, (2) the trial court erred by admitting into evidence, for propensity purposes, defendant's 16-year-old conviction for domestic battery and testimony about defendant's violent interaction with his niece, which the court previously ruled inadmissible, and (3) the trial court erred by sentencing defendant to an extended term for his conviction for unlawful restraint because it was not the greatest class felony of which he was convicted. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On December 2, 2016, defendant was charged by superseding indictment with three counts of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2016)), and one count of unlawful restraint (720 ILCS 5/10-3(a) (West 2016)). Count I (domestic battery—Class 2 felony) alleged that defendant, having been previously convicted of four domestic battery offenses, knowingly caused bodily harm to his wife, Christina Hernandez, by pulling a cord from her possession and causing a friction burn. Count II (domestic battery—Class 2 felony) alleged that defendant, having been previously convicted of four domestic battery offenses, knowingly made physical contact of an insulting or provoking nature by pulling a cord from Christina, causing a friction burn. Count III (domestic battery—Class 2 felony) alleged that defendant, having been previously convicted of four domestic battery offenses, knowingly caused bodily harm to Christina by picking her up and holding her. Count IV (unlawful restraint—Class 4 felony) alleged that defendant knowingly and

without legal authority detained Christina by picking her up and preventing her from leaving her house.

¶ 5    Prior to trial, pursuant to sections 115-7.4 and 115-20 of the Illinois Code of Criminal Procedure (Code) (725 ILCS 5/115-7.4; 115-20 (West 2016)), the State moved to admit evidence of defendant's five prior convictions of domestic battery. Christina was the named victim in cases 00-CM-1136, 09-CF-24, 10-CF-255, and 12-CM-185. Case 10-CF-255 also named a second victim, Clarissa Hernandez, who was defendant's niece. In case 10-CF-254, the victims were defendant's sons. The trial court, Judge William P. Brady presiding, allowed the admission into evidence of defendant's convictions in cases 00-CM-1136, 09-CF-24, 10-CF-255, and 12-CM-185. However, the court denied admission of defendant's conviction in case 10-CF-254, where the victims were defendant's sons. With respect to case 10-CF-255, defense counsel asked whether testimony concerning defendant's niece would be admitted. The court responded that it would not allow evidence of domestic violence against anyone other than defendant's wife. However, the court's written order did not contain that limitation.

¶ 6    Defendant's jury trial commenced on January 24, 2017, Judge Philip G. Montgomery presiding. Before jury selection, defense counsel asked the court to review Judge Brady's pretrial rulings. The State explained that Judge Brady allowed four prior domestic battery convictions to be admitted as propensity evidence. The court asked if Christina was the alleged victim in those cases. The State replied that she was. The court then declined to review Judge Brady's rulings, stating,

"I'm not going to review another judge's ruling when there's been a full hearing in regards to that on a prior occasion, so I'm going to deny your request to re-review Judge Brady's

rulings and we'll stand by Judge Brady's rulings and we'll just work our way through the trial.

If you have an objection, obviously I would appreciate it if you would object at the appropriate time, and we'll deal with it at that time."

¶ 7 The State's case began with Christina, who testified as follows. Christina and defendant had been married for 21 years and they had four children. On June 24, 2016, Christina was at home with defendant and their 16-year-old son, Justin. Christina testified that defendant "blasted" the television. She asked defendant to turn the TV down "multiple times." He refused. According to Christina, defendant blasted the TV on a regular basis, and this was not the first time that they argued about it. The television was hooked up to a speaker, which "made it even louder." In response to defendant's refusal to turn down the television's volume, Christina switched the TV off and put it in the trunk of her car.

¶ 8 Defendant then put a different TV on top of a large entertainment system in the living room. Christina told defendant that she was taking the second television too, and defendant said, "No." Christina testified that she "picked the cord up to take [the second television], [when defendant] told me I wasn't taking it, and he pulled the cord." Christina testified that the cord, which was not plugged in, "wrapped around me, so I had marks on my arm."

¶ 9 Next, defendant picked Christina up by her waist and told her that he was throwing her outside. Christina testified that she grabbed the couch, but defendant walked toward the door with her kicking and squirming to break free of his hold. Christina punched defendant in the face to get him to let go of her. After about 20 seconds, defendant let her go.

¶ 10 Christina went to her bedroom, shut the door, and called the police. Later, she noticed a bruise on her leg from when she hit her leg on the furniture as she was kicking. Christina testified

that photographs taken on the day of the incident depicted an injury to her arm, seen as red marks, caused by defendant pulling the TV cord. Christina also testified that she did not want defendant to grab the cord from her or to pick her up and carry her to the door.

¶ 11 Christina testified that defendant previously had been convicted of domestic battery against her. One such conviction arose from a 2000 incident in their Aurora home. Their son Max had been injured, and defendant was "irate" and was "screaming and yelling" at her. Defendant pushed Christina, so she called the police, but defendant hung up the phone. Defendant was arrested, but Christina did not sign a complaint against him.

¶ 12 Christina testified that there was another incident in 2009. Defendant came home very late one evening, "breaking through the back door." Christina asked defendant where he had been, and defendant told her that it was none of her business. They argued and pushed each other. Defendant "smushed" Christina's face into a window while he held her hands behind her. Defendant used Christina's own hands to punch himself until he bled. Christina's hands were cut and swollen, and she had marks on her wrists. Defendant was arrested, and that time Christina gave police a sworn statement.

¶ 13 Christina testified to yet another incident. In 2010, she and her children were visiting her mother-in-law when defendant showed up and "started arguing and calling [Christina] names." Defendant's niece was also there. The niece and defendant argued about Christina and then physically fought outside of the house. The niece was lying on the ground while defendant was choking her. Christina pushed defendant off his niece and "began scuffling" with defendant so that the niece could get away and flee back into the house. When Christina tried to get back into the house, defendant shut the door on her arm, injuring her and causing bruises. Christina had an order of protection against defendant in place at the time of this incident. Defendant's mother called

the police, and defendant was arrested. Christina testified that she did not know whether defendant was convicted of domestic battery. Christina testified that she continued to stay with defendant despite the physical abuse because he kept promising to change and get help.

¶ 14    Christina testified on cross-examination that she and defendant were arguing over his desire to watch TV when she took the first television and put it in the trunk of her car. Then, when defendant brought the second television into the living room, they continued to argue over his intention to watch TV.

¶ 15    Christina further testified on cross-examination that, in 2010, she told the police that she was not sure who slammed the door on her arm. She testified that she knew that defendant had done it, but she lied to the police in 2010 because she did not want defendant to get into trouble. She agreed that her demeanor was calm during her phone call to the police on June 24, 2016. Christina did not tell police dispatch about the injuries to her arm or leg. Rather, she requested advice from police dispatch about how to have defendant removed from the house. Christina stated that she called the non-emergency police line instead of 9-1-1 because her injuries were not life-threatening.

¶ 16    At the State's request, the court admitted into evidence certified copies of defendant's convictions of the three domestic batteries for the incidents occurring in 2000, 2009, and 2010, and one violation of order of protection occurring in 2010. The State read to the jury the case numbers and the charges for which defendant was convicted.

¶ 17    Justin Hernandez testified as follows. On the morning of the present incident, Justin was in his room. He heard defendant yelling loudly from the living room. Justin also heard Christina's voice, but it was quieter. Justin could not entirely make out what was being said.

¶ 18    Sandwich police officer Eric Bright testified next for the State. He was dispatched to the defendant's home at 10:37 a.m. on June 24, 2016, regarding a "physical domestic." Defendant would not step outside to talk to Bright, although he invited Bright into the house. Bright spoke with Christina, who was upset and crying. Bright saw "what appeared to be a friction burn" on Christina's left arm and a nickel-size lump on her left shin. Bright took photos—which he described as "blurry" and "not good"—of Christina's injuries. Bright also spoke with Justin and defendant. Defendant was "relatively calm overall," and he had no injuries. Bright arrested defendant for domestic battery, after which defendant refused to put on a pair of shoes that were readily available.

¶ 19    On cross-examination, Bright admitted that the narrative portion of his report did not indicate that Christina was upset and crying. The court then admitted into evidence Bright's photos of Christina's injuries and published them to the jury.

¶ 20    During deliberations, the jury sent three questions to the court: (1) "Can we get three more sets of the qualifications of the charges?" (2) "Is count two only related to [defendant] pulling the cord or the whole incident?" and (3) "Can you please define provoking or insulting nature?" Upon agreement of the parties, the court responded: "You have all the instructions you are going to receive. Please continue to deliberate."

¶ 21    The jury found defendant guilty of one count of domestic battery (count II) (insulting or provoking conduct based on defendant grabbing the cord and causing a friction burn to Christina) and unlawful restraint (count IV). The jury found defendant not guilty of the remaining charges.

¶ 22    At the sentencing hearing following the denial of defendant's posttrial motion, the parties agreed that defendant was not eligible for extended-term sentencing on the domestic battery conviction. However, the court found, without objection, that defendant was eligible for extended-

term sentencing on the unlawful restraint conviction. Noting defendant's 27-year criminal history, his disrespect for the law, and his "abysmal" treatment of women, the court sentenced defendant to six years' incarceration on the Class 2 domestic battery conviction and to an extended six-year sentence on the Class 4 unlawful restraint conviction, to run concurrently. On July 11, 2017, defendant filed a motion to reconsider, which the court denied on November 29, 2017. On the same day, defendant filed a notice of appeal. He filed an amended notice of appeal on December 15, 2017.

¶ 23                                    II. ANALYSIS

¶ 24                              A. Other-Crimes Evidence

¶ 25     Defendant challenges the court's admission into evidence of his 2000 conviction on the grounds that it is too old and dissimilar to the present case. Defendant also complains of the admission into evidence of his 2010 conviction that involved both Christina and defendant's niece.

¶ 26                            1. 2000 Offense (00-CM-1136)

¶ 27     The State argues that defendant forfeited this issue by failing to object at trial and raise the issue in his posttrial motion. Contrary to the State's assertion, the record indicates that defendant objected during Christina's testimony and included the issue in his posttrial motion.

¶ 28     A determination of the admissibility of evidence is in the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *People v. Pikes*, 2013 IL 115171, ¶ 12; *People v. Illgen*, 145 Ill. 2d 353, 364 (1991). Under the abuse-of-discretion standard, the appellate court owes some deference to the trial court's ability to evaluate the evidence's impact on the jury. *People v. Donoho*, 204 Ill. 2d 159, 186 (2003). The threshold for finding an abuse of discretion is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view

adopted by the trial court. *In re Leona W.*, 228 Ill. 2d 439, 460 (2008); *Donoho*, 204 Ill. 2d at 182. Reasonable minds can disagree about whether certain evidence is admissible without requiring a reversal of a trial court's evidentiary ruling under the abuse-of-discretion standard. *Donoho*, 204 Ill. 2d at 186.

¶ 29    Generally, evidence of other crimes is not admissible to show the defendant's character or propensity to commit crime. Ill. R. Evid. 404 (eff. Jan.1, 2011); *Illgen*, 145 Ill. 2d at 364. However, section 115-7.4 of the Code provides an exception where, as here, the defendant is charged with domestic violence. *People v. Dabbs*, 239 Ill. 2d 277, 291 (2010). Section 115-7.4(a) provides that "evidence of the defendant's commission of another offense or offenses of domestic battery is admissible and may be considered for its bearing on any matter to which it is relevant." 725 ILCS 5/115-7.4(a) (West 2016). However, other-crimes evidence will not be admitted if its prejudicial effect substantially outweighs its probative value. *Dabbs*, 239 Ill. 2d at 284. In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider (1) the proximity in time to the charged offense, (2) the degree of factual similarity to the charged offense, or (3) other relevant facts and circumstances. 725 ILCS 5/115-7.4(a) (West 2016).

¶ 30    Defendant argues that the court erred in admitting his 2000 domestic battery conviction, given its lack of proximity in time and lack of similarity to this case. First, as to proximity in time, there is no bright-line rule precluding the admission of aged events. See *Donoho*, 204 Ill. 2d at 183-84 (affirming the admission of other-crimes evidence when the incidents occurred 12 to 15 years before the conduct at issue and noting other cases admitted such evidence when it was over 20 years old); *Illgen*, 145 Ill. 2d at 370 (whether other-crimes evidence is to be admitted "should not, and indeed cannot, be controlled solely by the number of years that have elapsed"). Courts have found decades-old other-crimes evidence admissible where it is sufficiently credible and

probative. See, *e.g.*, *People v. Braddy*, 2015 IL App (5th) 130354, ¶ 37 (20 years between offenses); *People v. Smith*, 2015 IL App (4th) 130205, ¶ 29 (12 to 18 years between the offenses); *People v. Davis*, 260 Ill. App. 3d 176 (1994) (this court held that other-crimes evidence was admissible where the other crime occurred more than 20 years prior to the charged offense). Consequently, we determine that the age of the conviction did not bar its admission.

¶ 31    Second, defendant argues that the 2000 incident was dissimilar to the present domestic battery charges because it did not involve a television and, unlike the present case, in 2000, defendant stopped Christina from calling the police. The "existence of some differences" between a charged offense and other-crimes evidence does not defeat the admissibility of the other-crimes evidence, because no two crimes are identical. *Donoho*, 204 Ill. 2d at 185. Important here is that both the 2000 incident and the present domestic battery charges involved defendant angrily yelling and physically abusing Christina while their son was in the home. To be admissible under section 115-7.4, the other-crimes evidence must merely bear "general similarity" to the charged offense. *People v. Heller*, 2017 IL App (4th) 140658, ¶ 44. Consequently, we determine that the 2000 incident was reasonably close in time and factually similar enough to the domestic battery in this case to render it relevant and probative. Accordingly, we cannot say that the trial court abused its discretion in admitting evidence of the 2000 incident.

¶ 32                              2. 2010 Offense (10-CF-255)

¶ 33    Defendant argues that Christina's testimony regarding his niece's involvement in the 2010 offense was irrelevant and highly prejudicial. For that reason, defendant argues, Judge Brady ruled it inadmissible when addressing the State's motion to admit other-crimes evidence.

¶ 34    Defendant acknowledges that defense counsel failed to object at trial to this testimony. We also note that defendant failed to raise this issue in his posttrial motion. Therefore, defendant

has forfeited this issue. *People v. Johnson*, 238 Ill. 2d 478, 484 (2010) (citing *People v. Enoch*, 122 Ill.2d 176, 186 (1988)). Further, defendant does not argue plain error. Thus, plain-error review is forfeited. See *People v. Hillier*, 237 Ill. 2d 539, 545-46 (2010). However, defendant asserts that his counsel was ineffective for failing to object to Christina's description of defendant's conduct toward his niece in recounting the 2010 offense.

¶ 35    To establish ineffective assistance of counsel, a defendant must show that (1) the attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because a defendant must satisfy both prongs of this test, the failure to establish either is fatal to the claim. *Strickland*, 466 U.S. at 697. Here, we dispose of defendant's assertion of ineffective assistance of counsel on the prejudice prong. The trial court properly admitted evidence of three prior domestic battery convictions. Christina testified that, while defendant was angry and yelling, he grabbed a cord that was wrapped around her arm, causing a friction burn. Defendant then picked Christina up and carried her toward the door to throw her out of the house. None of this evidence was contradicted. Accordingly, we reject defendant's speculative assertion that the outcome of the trial probably would have been different had the evidence regarding defendant's niece been excluded. See *People v. Bew*, 228 Ill. 2d 122, 135 (2008) ("*Strickland* requires actual prejudice be shown, not mere speculation as to prejudice").

¶ 36                              B. Sufficiency of the Evidence

¶ 37    Defendant argues that the State failed to prove him guilty beyond a reasonable doubt of domestic battery because there was no evidence that he made physical contact of an insulting or provoking nature. See 720 ILCS 5/12-3.2(a)(2) (West 2014) ("A person commits domestic battery

if he or she knowingly without legal justification by any means * * * [m]akes physical contact of an insulting or provoking nature with any family or household member").

¶ 38    The State has the burden of proving beyond a reasonable doubt each element of an offense. *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979); *People v. Gray*, 2017 IL 120958, ¶ 35. When a defendant challenges the sufficiency of the evidence, a court of review must determine "whether, [after] viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *Gray*, 2017 IL 120958, ¶ 35. It is not the role of the reviewing court to retry the defendant. *In re Q.P.*, 2015 IL 118569, ¶ 24. Rather, it is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *People v. Bradford*, 2016 IL 118674, ¶ 12. Therefore, a court of review will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *Bradford*, 2016 IL 118674, ¶ 12. A criminal conviction will not be reversed for insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *Gray*, 2017 IL 120958, ¶ 35.

¶ 39    In count II of the superseding indictment, the State charged that defendant knowingly made physical contact of an insulting or provoking nature by pulling a cord from Christina, causing a friction burn. The essential elements as stated in the jury instructions were that (1) "the defendant knowingly made physical contact of an insulting or provoking nature with Christina Hernandez," and (2) "Christina Hernandez was then a family or household member to the defendant."

¶ 40    Defendant challenges the evidence only as to the first element, arguing that he did not knowingly make insulting or provoking physical contact with Christina. Defendant contends that

his goal in grabbing the television cord from Christina was to maintain control of the television rather than to make physical contact of an insulting or provoking nature.

¶ 41 We reject defendant's argument because, even if Christina did not explicitly testify that she did not want defendant to pull the cord, the trier of fact may take into account the context in which a defendant's contact occurred to determine whether the touching was insulting or provoking. *People v. Fultz*, 2012 IL App (2d) 101101, ¶ 49. Indeed, this court has previously held that contact can be insulting or provoking depending on the context, including the defendant and the victim's relationship. *People v. DeRosario*, 397 Ill. App. 3d 332, 334-35. In *DeRosario*, we determined that the evidence was sufficient to convict defendant of domestic battery where, in the context of a failed relationship, the defendant sat close to the victim in a smoking lounge of an office building with his knees touching the victim's back and hip. *DeRosario*, 397 Ill. App. 3d at 332-33, 335. We reasoned that, "while the conduct might be completely innocent in another context, under the facts here [the trier of fact] could find that [the] defendant knowingly provoked the victim." *De Rosario*, 397 Ill. App. 3d at 334-35.

¶ 42 Here, defendant grabbed the cord from Christina while they argued about the television. This occurred after Christina had taken the first television to her car. Christina picked up the cord to take the second television, defendant told her that she was not taking it, and he pulled the cord hard enough to give her a friction burn. Their son heard defendant yelling. Defendant and Christina had a tumultuous relationship, as established by defendant's numerous domestic battery convictions where Christina was the victim. Under these facts, the jury could reasonably find, beyond a reasonable doubt, that defendant knowingly made physical contact with Christina of an insulting or provoking nature.

¶ 43    Defendant cites *People v. Craig*, 46 Ill. App. 3d 1058 (1977). In *Craig*, the defendant, a hospital security guard, touched the complainant while removing a camera from her hand to enforce the hospital's policy against cameras. *Craig*, 46 Ill. App. 3d at 1059. The appellate court reversed the defendant's battery conviction, finding no evidence that the defendant had any intention other than enforcing the hospital policy. *Craig*, 46 Ill. App. 3d at 1060. Here, by contrast, the contact occurred in the context of an argument, defendant's anger, and numerous prior domestic batteries against Christina.

¶ 44    Defendant asserts that the jury, as evidenced by its second question, was confused whether it could consider that defendant picked up Christina and carried her in deciding whether to convict him of domestic battery. Defendant maintains that the jury's confusion stemmed from the fact that it was never told not to consider this conduct.

¶ 45    The jury's second question read: "Is count two only related to [defendant] pulling the cord or the whole incident?" With defense counsel's agreement, the court answered: "You have all the instructions you are going to receive. Please continue to deliberate." To the extent that defendant now argues that the court abused its discretion in responding to the jury's question, we note again that defense counsel did not object to the court's response. Further, defendant did not raise the issue of the response to the jury's question in his posttrial motion. Where the defendant acquiesces in the answer given by the trial court to the jury's questions, the defendant cannot later complain that the court abused its discretion. *People v. Averett*, 381 Ill. App. 3d 1001, 1012 (2008) (citing *People v. Reid*, 136 Ill.2d 27, 38 (1990)). Further, if the defendant fails to object at trial or to raise the issue in his posttrial motion, as in this case, the issue is forfeited for appellate review.  *Reid*, 136 Ill. 2d at 38. In addition, because defendant fails to present a plain-error argument and analysis, he has forfeited review under the plain-error doctrine. See *Hillier*, 237 Ill. 2d at 545-46.

¶ 46     Even were we to review the issue under the plain-error rule, we would find no error. The jury could properly consider the context in which defendant's contact occurred to determine whether the touching was insulting or provoking, including that after defendant pulled the cord from Christina, he picked her up and carried her to the door. See *Fultz*, 2012 IL App (2d) 101101, ¶ 49 (contact can be insulting or provoking depending on the context, including the parties' relationship.) Moreover, the jury was properly instructed as to the issues in count II of the superseding indictment.

¶ 47     Defendant next argues that the State added to the alleged "jury confusion" during its closing argument when it commented on the cord incident in conjunction with the defendant's act of picking up Christina. However, because defense counsel did not object to the State's closing argument or raise this issue in a posttrial motion, defendant has forfeited this issue. *People v. Anaya*, 2017 IL App (1st) 150074, ¶ 50 (citing *People v. Woods*, 214 Ill. 2d 455, 470 (2005) ("a defendant must both specifically object at trial and raise the specific issue again in a posttrial motion to preserve any alleged error for review")).

¶ 48     Even if defendant had preserved the issue, we determine that the State's comments were not improper. The State remarked:

> "Going over the first proposition with you, that the defendant knowingly made physical contact of an insulting or provoking nature with Christina Hernandez, the defendant is charged with causing insulting or provoking contact when he pulled the cord from Ms. Hernandez and caused a friction burn on her arm.
>
> Clearly this is contact that Ms. Hernandez testified to, she told you about, she told you that this was *** contact that she did not want. She told you she was provoked, that the defendant continued to move on, and that he picked her up.

She was so provoked by the defendant's conduct that she called the police that day."

¶ 49    Defendant posits that, had the jury confined its deliberations only to the cord incident, it would have found the evidence insufficient to convict. During closing arguments, the prosecutor is entitled to wide latitude and may comment on the evidence and any fair, reasonable inferences from it, even if those inferences reflect negatively on the defendant. *Anaya*, 2017 IL App (1st) 150074, ¶ 86. "Due to its very nature, knowledge is usually proven by circumstantial evidence, and thus, may be inferred from the facts and circumstances in the case." *People v. Hernandez*, 2012 IL App (1st) 092841, ¶ 118. Therefore, the State's comments that defendant picked Christina up after he pulled the cord and that she called the police were not improper, because the comments addressed circumstances regarding defendant's knowledge and the context of their relationship. See *Fultz*, 2012 IL App (2d) 101101, ¶ 49 ("the trier of fact may take into account the context in which a defendant's contact occurred to determine whether the touching was insulting or provoking[,]" including the relationship between the victim and the defendant).

¶ 50                                C. Sentencing

¶ 51    Defendant argues that the trial court erred by sentencing him to an extended-term sentence for a Class 4 unlawful restraint conviction, because it was not the most serious offense for which he was convicted. The State argues that defendant forfeited this claim because he failed to raise it below or in his opening appellate brief.

¶ 52    Preservation of a claim of sentencing error requires both a contemporaneous objection and a written postsentencing motion. *Hillier*, 237 Ill. 2d at 544. Defendant did neither. In his reply brief, defendant urges this court's review of the issue under the second prong of the plain-error doctrine. We recognize that raising the plain-error doctrine in a reply brief is sufficient to allow us to review for plain error. *People v. Ramsey*, 239 Ill. 2d 342, 412 (2010). However, defendant's

entire plain-error analysis consists of one conclusory sentence. When a defendant fails to present an argument on how either of the two prongs of the plain-error doctrine is satisfied, he forfeits plain-error review. *Hillier*, 237 Ill. 2d at 545-46.

¶ 53     However, forfeiture is a limitation on the parties but not the reviewing court, and we can overlook forfeiture where necessary to obtain a just result or maintain a sound body of precedent. *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 65. Here, we overlook forfeiture because of the closeness of this issue and the necessity to obtain a just result. Before we reach the issue of plain error, we first determine whether any error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 54     Only when there are "separately charged, differing class offenses that arise from unrelated courses of conduct" will a trial court have discretion to impose an extended-term sentence for the conviction that is not within the most serious class. *People v. Coleman*, 166 Ill. 2d 247, 257 (1994). To determine whether convictions arise from unrelated courses of conduct, courts apply the same test used to determine whether consecutive sentences are appropriate under section 5-8-4 of the Code (730 ILCS 5/5-8-4 (West 2016)): "whether there was a substantial change in the nature of the defendant's criminal objective." *People v. Bell*, 196 Ill. 2d 343, 354 (2001). Thus, "where lesser and greater class offenses are not committed as a part of a single course of conduct, an extended term may be imposed on a lesser offense." *People v. Hummel*, 352 Ill. App. 3d 269, 271 (2004)). A sentence that is imposed within the statutory limits will not be disturbed absent an abuse of discretion. *Coleman*, 166 Ill. 2d at 258.

¶ 55     Here, the trial court did not articulate why it imposed an extended-term sentence for the unlawful restraint conviction. However, there is a presumption that a trial court knows the law and applies it. *People v. Gaultney*, 174 Ill. 2d 410, 420 (1996); *People v. Robinson*, 2015 IL App (1st)

130837, ¶ 103. Thus, we must presume that the trial court reasoned that there was a substantial change in defendant's criminal objective.

¶ 56    We determine that no error occurred. The record shows that Christina and defendant initially argued about the volume at which defendant watched TV. Defendant was watching a television in their son's bedroom. Christina snatched that TV away and put it in the trunk of her car. When she returned to the house, defendant was placing another TV atop the entertainment center in the living room. According to Christina, she told defendant that she was "taking" that television, too. Defendant said, "No," she was not going to take it. The TV was not plugged in, and Christina grabbed the cord. Then, defendant pulled on the cord, causing a friction burn on Christina's arm.

¶ 57    The altercation over possession of the TV abruptly ended when defendant attempted by force to throw Christina out of the house. The court could have inferred that defendant's objective switched from obtaining physical possession of the TV to controlling Christina's movements by picking her up by her waist and restraining her while he carried her toward the door. Christina was not concerned with the TV as she grabbed onto furniture to prevent herself from being thrown out of the house, because she made no more mention of the TV in her testimony. Given defendant's prior history of domestic battery toward Christina, the court could have inferred that defendant's criminal objective was to physically control and abuse his wife. This case is unlike *People v. Peacock*, 359 Ill. App. 3d 326, 338 (2005), where the court held that the defendant's ultimate purpose behind his various offenses was to dissuade the victim from breaking up with him. In *Peacock*, the defendant kept saying throughout the commission of all the offenses that he wanted to be with the victim. *Peacock*, 359 Ill. App. 3d at 338. Here, significantly, defendant did not verbally or physically spar over the television while he tried to throw Christina out the door. Also,

significantly, Christina testified that the incident with the second television involved defendant's desire to watch TV, but she did not ascribe that motive to his attempt to throw her out of the house. We further note that defendant himself separates the two incidents in arguing that the jury impermissibly considered that he picked up Christina and carried her in its domestic battery deliberations. Defendant vociferously contends that the two incidents involved disparate criminal conduct. Accordingly, we cannot say that the court abused its discretion in sentencing defendant to an extended term for unlawful restraint.

¶ 58                                    III. CONCLUSION

¶ 59    For the foregoing reasons, the judgment of the circuit court of DeKalb County is affirmed.

¶ 60    Affirmed.

¶ 61    JUSTICE McLAREN, concurring in part and dissenting in part.

¶ 62    I concur as to the alleged errors that occurred during the trial.   I dissent because I disagree with the majority's decision regarding sentencing.

¶ 63     Here defendant could be sentenced to an extended term for his unlawful restraint conviction only if "there was a substantial change in the nature of [his] criminal objective" (*Bell*, 196 Ill. 2d at 354) from the domestic battery.

¶ 64    The parties did not raise the issue of whether defendant's criminal objective substantially changed and the trial court made no finding regarding such. Given this absence of any relevant finding, the majority proceeds with the maxim that we must presume that the trial court knew the law and applied it. *Infra* ¶ 55. However, this presumption has an exception: "[w]e ordinarily presume the trial judge knows and follows the law *unless the record indicates otherwise.*" (Emphasis added.) *Gaultney*, 174 Ill. 2d, at 420. I submit that the record indicates otherwise.

¶ 65    *Gaultney*, 174 Ill. 2d, at 420, stands for the proposition that the presumption that the trial court knows and follows the law ends if the presumption is inconsistent with the record. Here, the record indicates that defendant wanted Christina out of the house in order to watch TV unobstructed. The trial court never explained its rationale for its sentence for the unlawful restraint conviction and the record reflects that the rationale of the majority by speculating that the trial court "could have inferred" regarding the trial court's nonexistent rationale is unreasonable. Rather, the record amply supports a different conclusion consistent with *Robinson*, 2015 IL App (1st) 130837, ¶¶ 107-108. Defendant was dealing with a woman who removed one TV from the house and was in the process of removing a second. Because defendant's battery conviction arose from his attempt to prevent her from removing the second TV, the only conclusion supported by the record is that he attempted to remove Christina from the house to remove the continuing threat to his unobstructed TV viewing.

¶ 66    We note that, in creating the "substantial change in criminal objective" test, our supreme court specifically reasoned that it wanted to avoid creation of a test in which virtually all crimes involving multiple offenses would be liable to have extended terms imposed upon the lesser offense. *Bell*, 196 Ill. 2d at 353. Yet, this is exactly what the majority has done. The determination that defendant changed his objective from wanting to stop his wife from preventing him from watching TV to physically controlling and abusing her seriously limits the application of the "substantial change in criminal objective" test. The majority merely describes defendant's actions and pronounces that his motive "switched." *Infra* ¶ 55. But there is no evidence that his motive "switched."  Furthermore, the actions are elements of the offense not a motive. Motive is not an element of the offense that must be proved in order to convict. Rather, defendant claimed he was going to throw Christina out of the house. Why? Because Christina said she was going to prevent

him from watching TV by taking the second one. The majority fails to recognize that defendant's only objective supported by the record was his desire to watch TV. If that was not his objective there was no reason for him to pull the TV cord wrapped around Christina's wrist.

¶ 67     The only evidence of any criminal objective for *both* offenses was that defendant wanted to watch TV. Christina was clearly an obstacle to achieving his goal. After Christina removed the first TV and attempted to remove the second TV, defendant attempted to remove her from the house by lifting her up and carrying her to the door. This was merely an attempt to effectuate his original objective to remove Christina, the obstacle to watching TV. Defendant could have battered Christina into submission. But he did not do so. He attempted to remove her without further injury. See *People v. Arrington*, 297 Ill. App. 3d 1, 5 (1998) (this court held that there was no substantial change in the defendant's criminal objective between attempted robbery and aggravated battery reasoning, "that inherent in any plan to rob a store is also an intention for the robber to escape from the premises with the purloined proceeds").

¶ 68     Further, the two crimes occurred in immediate succession. After Christina attempted to take the second TV, defendant immediately lifted Christina off the floor and tried to remove her from the house. Thus, there was no substantial change in the nature of defendant's criminal objective between the acts constituting domestic battery (grabbing the TV cord and injuring Christina's arm) and the acts constituting the unlawful restraint (picking Christina up and carrying her to the door), as they all occurred in succession. *Cf. People v. Reese*, 2015 IL App (1st) 120654, ¶ 128 (convictions of vehicular invasion, attempted armed robbery, and escape all arose from the defendant's escape attempt, so the court could impose extended term sentences on only the offenses within the most serious class of felony); *Robinson*, 2015 IL App (1st) 130837, ¶¶ 107-

108 (residential burglary and aggravated battery were part of the same criminal objective of robbery).

¶ 69    Contrary to the majority's speculation, there is no evidence that defendant intended to commit one crime, and in the course of that crime developed a new objective and committed another. The majority ignores this lack of evidence and, instead, finds that the "altercation over possession of the TV abruptly ended when defendant attempted by force to throw Christina out of the house." *Infra*. at ¶ 57. The majority then asserts that defendant's "criminal objective was to physically control and abuse his wife." However, physical control is merely a description of defendant's conduct and evidence of unlawful restraint; but it is not evidence of defendant's objective. Further, contrary to the majority's speculation, there was no evidence that defendant's objective was to abuse Christina.   He held her for 20 seconds, and as he carried her to the door he did not attempt to strike or injure her, even as she struck him in the face.

¶ 70    The majority supports its finding regarding defendant's change in criminal objective by noting that the victim, Christina, failed to testify that *she* was "concerned with the TV," while defendant carried her toward the door, and *her* failure to testify that defendant's motive in attempting to throw her out of the house was his "desire to watch TV." *Id*. The majority's use of this absence of evidence creates a cognitive dissonance. Christina's failure to testify that she was concerned with the TV as defendant carried her to the door is irrelevant to defendant's objective. In addition, Christina was not even asked to speculate about defendant's motive in attempting to throw her out of the house and, therefore, the majority is speculating on speculation which is a novel utilization of an inapplicable presumption.

¶ 71    Having waived the failure of appellate counsel to properly develop a reasonably rational argument establishing the continuing objective of the solace of watching a loud TV, the majority

cites a inapplicable presumption that essentially bootstraps its adoption, *sub silencio*, of the State's faulty argument and does what *Bell* says should not be done. *Bell*, 196 Ill. 2d at 353.

¶ 72    In this case, there is no doubt that defendant pulled the TV cord wrapped around Christina's wrist. He wanted to watch TV. Had the wife let him watch it, it is almost a certainty that he would not have picked her up and tried to remove her from the area. Unfortunately, his wife exhibited a persistent resistance to such an objective. Rather than batter her until she relented defendant attempted to remove her from the area where the TV was located. Defendant's failed attempt to remove Christina from the area "was merely a means to effectuate that objective." *Id*. ¶ 108. Thus, his criminal objective remained the same for both offenses. Conversely, the majority refuses to accept that defendant's objective was to watch TV with the least injury to his wife under the circumstances. We know for certain that defendant's statement that he was trying to remove his wife from the house was unrebutted. And removal was a more reasonable and less injurious resolution of terminating her repeated attempts to prevent defendant from watching TV. It would seem the majority would accept additional batteries in order to watch TV was as consistent as the initial battery but attempting a less injurious resolution was not. Therefore, I partially dissent.