# Illinois Official Reports

## Appellate Court

---

*People v. Irons*, **2017 IL App (4th) 150295**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEREMY A. IRONS, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-15-0295 |
| Filed | June 30, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 15-CF-13; the Hon. Thomas J. Difanis, Judge, presiding. |
| Judgment | Affirmed; cause remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Ross E. Allen, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and John M. Zimmerman, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE POPE delivered the judgment of the court, with opinion.<br>Presiding Justice Turner and Justice Knecht concurred in the judgment and opinion. |

**OPINION**

¶ 1 On March 17, 2015, defendant, Jeremy A. Irons, was convicted of aggravated domestic battery and intimidation and later sentenced to consecutive terms of 14 years and 6 years in prison. Defendant appeals, making the following arguments: (1) he was deprived of his right to a fair trial because the trial court allowed the jury to hear excessive other-crimes evidence; (2) his sentence was excessive in light of his youth, criminal background, and lack of serious injury to the complainant; and (3) his assessments should be reduced from $553 to $351. We affirm defendant's conviction and prison sentence but remand for the trial court to reduce defendant's outstanding assessments from $553 to $351.

¶ 2 **I. BACKGROUND**

¶ 3 In January 2015, the State charged defendant with aggravated domestic battery (720 ILCS 5/12-3.3 (West 2014)) and intimidation (720 ILCS 5/12-6(a)(1) (West 2014)). In February 2015, the State filed a motion to admit defendant's prior acts of domestic violence pursuant to section 115-7.4 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/115-7.4 (West 2014)). At the hearing on the motion, the State noted (1) the acts involved Sada Hoskins (the alleged victim in this case) and defendant and (2) occurred within a six-month period before the charged incident. The State argued this evidence explained why Hoskins stayed in close proximity to defendant after he battered her. Defendant had threatened he would kill Hoskins if she told anyone of the abuse. The court granted the motion after weighing the probative value against the prejudicial impact of the evidence. At the same hearing, the court arraigned defendant on two additional counts of domestic battery.

¶ 4 At trial, Hoskins testified she was living with her mother, Rosie Chenault, in Danville and dating defendant on December 31, 2014, when the charged offenses occurred. She met defendant on the Internet in September 2014. He lived in Chicago at the time, and she would drive there to see him. As their relationship progressed, defendant became abusive. Defendant slapped her and called her names when she talked to other men or viewed their Facebook pages. He first hit her in front of his grandmother's house after he asked her about talking to other men on the phone. He next hit her while they were driving on Lake Shore (presumably in Chicago) because of her Facebook activity. Defendant had all the passwords to her social media accounts.

¶ 5 Defendant also abused her at his cousin's apartment in Chicago, choking her when she yelled for help and hitting her hard enough to leave a scar on her nose. She and defendant went to South Shore Hospital, where a hospital worker called the police. Defendant left in Hoskins's car. Her mother had to pick her up at the hospital. After this incident, Hoskins said she was done with defendant, but she later took him back, blaming herself for what happened.

¶ 6 On another occasion, she and defendant were driving at night in Chicago in her car. She told defendant she did not want to be with him any longer. He accused her of cheating on him, took her keys and phone, and left her alone in the car in an unfamiliar area of the city. She walked to a gas station and called the police. She and defendant reunited again after a text message and a phone call.

¶ 7 According to Hoskins, defendant made her call him before she left for work at 6 a.m. and talk to him while she was driving. He did not want her to give anyone else a ride. She could not

take her phone into her workplace, but defendant wanted her to call him on her breaks. At the end of December, defendant started accusing her of having sex with another man while on the phone with defendant. He became angry when she denied this.

¶ 8     The charged incidents occurred on December 31, 2014, and the early morning hours of January 1, 2015. While driving from Danville to Champaign, defendant again accused Hoskins of having sex with another man while she was on the phone with defendant. He reached across the car and slapped Hoskins on the left side of her face. In Champaign, defendant began hitting her, telling her to admit she cheated on him. She lied and said she was unfaithful. Defendant then banged her head on the interior side of the car until she "blacked out." He told Hoskins she was lucky he did not bust her head through the car window. Defendant also slapped and choked her during this incident and threatened to kill her if she told anyone. He said he had a prior standoff with the police and could easily get a gun.

¶ 9     Defendant and Hoskins then went to his mother's house. She told defendant she wanted to go home, but he said no. Defendant told Hoskins not to say anything to his mother because he had no problem hitting her in front of his mother. While in the house, Hoskins wore a hat, which she pulled to the side of her face to hide her injuries. After midnight, defendant took Hoskins home but told her not to let her mother see her face. Hoskins promised not to tell her mother. Once inside, though, she went straight to her mother's room. She and her mother called the police, and Hoskins went by ambulance to the hospital in Danville.

¶ 10    Rosie Chenault, Hoskins's mother, testified she was in bed watching television when Hoskins arrived home. When Hoskins entered her room, Chenault saw her swollen face. She had never seen Hoskins's face look like it did that night.

¶ 11    Illinois State Police trooper Nicholas Orndorff testified he spoke with Hoskins at the hospital, took her statement, and took photographs of her observable injuries. He immediately noticed her facial injuries, including swollen contusions above each of her eyes, red marks on the right side of her head, and a swollen lip. Hoskins showed Orndorff a red mark around her neck. He then went to Champaign and arrested defendant. The State introduced into evidence photographs of Hoskins's injuries.

¶ 12    Defendant's mother, Leslie Lee, offered the following testimony on his behalf. Defendant and a young woman came to her house on the evening of December 31, 2014. She did not remember the woman's name but was introduced and observed the woman, including her face. Lee did not notice any injuries, and the woman and defendant were affectionate with each other.

¶ 13    Vaughn Cunningham, a family friend, also testified for defendant. She saw defendant on New Year's Eve with a woman he called his "female" and was within a few feet of the woman, who seemed neither distressed nor injured.

¶ 14    The jury found defendant guilty of domestic battery, aggravated domestic battery, and intimidation.

¶ 15    Defendant's presentence report showed he was convicted of obstructing justice in July 2001 as a juvenile and sentenced to 12 months' probation. In March 2002, in a petition for adjudication, the State alleged defendant committed criminal sexual abuse and aggravated battery. In April 2002, defendant was resentenced to three years in the Department of Corrections (DOC), Juvenile Division, following defendant's admission he violated his probation. The sexual abuse petition was dismissed at the victim's request. In June 2004,

defendant was adjudicated delinquent on a burglary charge and sentenced to a DOC youth center. As an adult, defendant was convicted of attempted aggravated robbery, resisting a peace officer, and several traffic-related offenses.

¶ 16 At defendant's sentencing hearing, the trial court heard evidence defendant abused other women. Gabrielle Hayes testified she dated defendant for a year, and they had a child together. Defendant mistreated her during their relationship, knocking her down when she was seven months pregnant "for not doing something that he expected me to do or we agreed on doing." She also described an incident when defendant kicked in her parents' garage door and punched her face into a wall. Defendant threatened to kill her multiple times.

¶ 17 Dale Rawdin, an investigator for the Champaign County State's Attorney's Office, testified he investigated contact between defendant and Tormeka Foreman. Defendant called Foreman from the jail numerous times in violation of an order of protection. Rawdin listened to some of the recordings of the calls, which he described as "confrontational" and "argumentative."

¶ 18 David Smysor, an Urbana police detective, testified he also had investigated defendant. In December 2009, defendant's mother called the police because defendant had a rifle in her apartment and threatened her with the weapon. After a five hour standoff with the police, defendant tried to escape out a bathroom window but was apprehended by the police. The police recovered a .270-caliber bolt-action rifle in the apartment. Defendant's mother told Smysor that defendant was prone to outbursts of anger. Charges against defendant based on this incident were later dismissed.

¶ 19 Smysor investigated another domestic incident between defendant and his mother in June 2010. Defendant became angry when his mother would not let him use her car. He made three long gouges in the hood of the vehicle with a knife and then approached her with the weapon. She told the police she felt threatened. Their argument continued inside her apartment. Defendant then left and broke out the rear passenger window of the car. Charges with regard to this incident were also dropped.

¶ 20 Officer David Sawlaw of the Rantoul police department testified he responded to a report of domestic battery to Keshia Evans by defendant in August 2011. Evans told the police she and defendant were arguing, and defendant threw her to the ground, straddled her, and choked her. When a child entered the room, defendant let her up. The next morning, defendant choked her again, and she and her child fled the apartment in their pajamas and went to the police station. The police were never able to locate defendant.

¶ 21 The State asked the trial court to sentence defendant to 14 years on the aggravated domestic battery count and impose a consecutive sentence on the intimidation conviction. The court noted no statutory mitigating factors applied to defendant for this offense. According to the court, defendant's age, 27, was the only mitigating factor. In aggravation, the court noted defendant's prior criminal history and deterrence. The court stated, "The history, character and condition of this Defendant indicates that he is an incredibly violent individual with women and he maintains control" and "is the ultimate definition of what a domestic batterer is." The court sentenced defendant to the maximum 14-year sentence on the aggravated domestic battery charge, with a consecutive 6-year term on the intimidation conviction, noting defendant is an "incredibly dangerous young man."

¶ 22 This appeal followed.

## II. ANALYSIS

### A. Other-Crimes Evidence

Defendant argues he was deprived of his constitutional right to a fair trial because the trial court allowed the jury to hear excessive evidence of his other bad acts involving Hoskins. Defendant states the prejudicial impact of this evidence far outweighed its probative value, and the evidence should not have been admitted because the acts were not similar to the charged offense and included numerous general accusations. We will only find a trial court erred with regard to an evidentiary determination if the trial court abused its discretion, which occurs when a ruling is "arbitrary, fanciful, unreasonable, or when no reasonable person would adopt the trial court's view." *People v. Ward*, 2011 IL 108690, ¶ 21, 952 N.E.2d 601.

Evidence of other crimes or bad acts by a defendant is ordinarily inadmissible to establish a defendant's propensity to commit crimes. *People v. Pikes*, 2013 IL 115171, ¶ 11, 998 N.E.2d 1247. However, section 115-7.4 of the Procedure Code (725 ILCS 5/115-7.4 (West 2014)) allows for other-crimes evidence to be admitted in domestic violence prosecutions "so long as the evidence is relevant and its probative value is not substantially outweighed by the risk of undue prejudice." *People v. Dabbs*, 239 Ill. 2d 277, 291, 940 N.E.2d 1088, 1097 (2010). Section 115-7.4 states:

> "(a) In a criminal prosecution in which the defendant is accused of an offense of domestic violence as defined in paragraphs (1) and (3) of Section 103 of the Illinois Domestic Violence Act of 1986, or first degree murder or second degree murder when the commission of the offense involves domestic violence, evidence of the defendant's commission of another offense or offenses of domestic violence is admissible, and may be considered for its bearing on any matter to which it is relevant.
>
> (b) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:
>
> > (1) the proximity in time to the charged or predicate offense;
> >
> > (2) the degree of factual similarity to the charged or predicate offense; or
> >
> > (3) other relevant facts and circumstances." 725 ILCS 5/115-7.4 (West 2014).

As the statute makes clear, the court must still balance the probative value of the evidence against the risk of undue prejudice. *People v. Dabbs*, 239 Ill. 2d at 290-91, 940 N.E.2d at 1097.

Based on the record in this case, the trial court did not abuse its discretion by allowing Hoskins to testify, pursuant to section 115-7.4, of prior instances of abuse by defendant. All of the incidents in question concerned defendant and Hoskins and took place within a relatively short period of time. These incidents showed a common cause for the abuse, *i.e.*, defendant's suspicion Hoskins was involved with other men. At trial, the State did not offer domestic violence evidence of incidents involving other women.

Defendant points out the appellate court has required a new trial where the State's use of even one prior crime has prejudiced the defendant. See *People v. Thigpen*, 306 Ill. App. 3d 29, 39, 713 N.E.2d 633, 640 (1999); *People v. Nunley*, 271 Ill. App. 3d 427, 432-33, 648 N.E.2d 1015, 1018-19 (1995). Defendant's reliance on *Thigpen* and *Nunley* is misplaced because neither of those cases involved section 115-7.4. The trial court here did not abuse its discretion in admitting evidence of these other acts.

¶ 29                                    B. Jury Instruction

¶ 30        Defendant acknowledges the trial court instructed the jury consistent with Illinois Pattern
       Jury Instructions, Criminal, No. 3.14 (4th ed. 2000) (hereinafter, IPI Criminal 4th), to consider
       other-crimes evidence for the limited purpose of defendant's "criminal intent, motive, lack of
       mistake, [and] propensity to commit domestic violence" before the jury deliberated. However,
       defendant argues the court erred by not instructing the jury before the other-crimes evidence
       was introduced.

¶ 31        A committee note to IPI Criminal 4th No. 3.14 states: "At the time the evidence which is
       the subject of this instruction is first presented to the jury, the Committee recommends that an
       oral instruction should be given to explain to the jury the limited purpose of this evidence,
       unless the defendant objects to that instruction." IPI Criminal 4th No. 3.14, Committee Note, at
       104. In *People v. Roe*, 228 Ill. App. 3d 628, 635-36, 592 N.E.2d 596, 601 (1992), this court
       noted a contemporaneous instruction could assist the jury in understanding why it is being
       permitted to hear evidence of the defendant's other bad acts and reduce the likelihood this
       evidence would prejudice the defendant in the jury's eyes by simply showing his propensity to
       commit crime.

¶ 32        In *People v. Denny*, 241 Ill. App. 3d 345, 360-61, 608 N.E.2d 1313, 1324 (1993), this court
       stated: "Because of the significant prejudice to a defendant's case that the admission of other
       crimes evidence usually risks, we hold that trial courts should not only instruct the jury in
       accordance with [Illinois Pattern Jury Instructions, Criminal, No. 3.14 (2d ed. 1981),] at the
       close of the case, but also orally from the bench (unless defendant objects) at the time the
       evidence is first presented to the jury." However, this court also stated a trial court's failure to
       *sua sponte* provide this instruction is not plain error. *Denny*, 241 Ill. App. 3d at 360, 608
       N.E.2d at 1323.

¶ 33        When evidence of prior bad acts is admitted pursuant to section 115-7.4, unlike other cases
       where such evidence is admitted only on a tangential item, such as intent or motive, it can be
       admitted to show a defendant's propensity to commit acts of domestic violence. As this court
       recently stated, "In the interest of edification, we reiterate that other-crimes evidence admitted
       pursuant to section 115-7.4 of the Code (725 ILCS 5/115-7.4 (West 2014)) may be considered
       by the jury for any relevant matter, *including the defendant's propensity to commit the charged
       crime*." (Emphasis added.) *People v. Heller*, 2017 IL App (4th) 140658, ¶ 65, 71 N.E.3d 1113.
       As a result, a trial court *sua sponte* instructing the jury it can consider such evidence as
       evidence of a defendant's propensity to commit the charged act of domestic violence makes
       little sense. When evidence of other bad acts is being admitted pursuant to section 115-7.4, this
       type of instruction would not benefit the defendant. As a result, the trial court did not err in
       failing to *sua sponte* instruct the jury before Hoskins testified.


¶ 34                                        C. Sentence

¶ 35        Defendant next argues his sentence was excessive because he could have received 3 years
       in prison, but the court sentenced him to 20 years. The trial court sentenced defendant to the
       maximum extended term of 14 years in prison for aggravated domestic battery and a
       consecutive 6-year sentence for intimidation. Defendant argues this was excessive considering
       his age, 26, at the time of the offense, and what he describes as a "negligible criminal
       background," including one prior felony conviction for attempted aggravated robbery, which
       he committed when he was 17. We will not disturb a defendant's sentence unless we find the

trial court abused its discretion. *People v. Johnson*, 347 Ill. App. 3d 570, 573-74, 807 N.E.2d 1171, 1175 (2004).

¶ 36    Defendant failed to preserve this issue by filing a motion to reconsider the sentence. He asks us to consider this argument pursuant to the plain-error doctrine. Because the trial court did not err in sentencing defendant, we need not discuss the plain-error doctrine.

¶ 37    "A reasoned judgment as to the proper sentence to be imposed must be based upon the particular circumstances of each individual case." *People v. Perruquet*, 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884 (1977). Based on the record in this case, the trial court did not abuse its discretion in sentencing defendant. While defendant was young, he had prior juvenile and adult offenses. He had a violent nature and was not able to control his behavior. He also had a history of abusing women. The court stated defendant was "the ultimate definition of what a domestic batterer is." It stated the most important factor in fashioning defendant's sentence was the deterrent factor because the evidence showed defendant had continuously battered and attempted to exercise control over various women, including the victim in this case, for over five years. Further, defendant did not understand the severity of his conduct, arguing during his sentencing hearing he should receive the minimum sentence because he had not killed anybody and Hoskins was still walking. Because the trial court did not abuse its discretion in sentencing defendant, defendant was not prejudiced by his trial counsel's failure to file a motion to reconsider his sentence. As a result, we need not consider defendant's argument regarding the effectiveness of his trial counsel.

¶ 38                                    D. Fines and Fees

¶ 39    Defendant next argues the trial court improperly imposed $47 in assessments against defendant for a second domestic battery count. The State concedes the court erred in imposing $47 in assessments on this second count of domestic battery. We accept the State's concession.

¶ 40    Defendant also argues his presentence custody credit should have been applied against the following assessments: (1) $90 juvenile expungement fee; (2) $50 court finance fee; and (3) $15 State Police operations fee. Defendant was in custody for 107 days prior to sentencing and is entitled to $535 in presentence custody credit. The State concedes this point, and we accept the State's concession.

¶ 41    On remand, the trial court shall reduce the outstanding amount owed by defendant from $553 to $351 ($553-$47-$90-$50-$15=$351).

¶ 42                                    III. CONCLUSION

¶ 43    We affirm defendant's conviction and prison sentence but remand for the trial court to vacate defendant's $47 assessment for the second count of domestic battery and to apply defendant's presentence custody credit against his $90 juvenile expungement fee, $50 court finance fee, and $15 State Police operations fee, thereby reducing the amount owed by defendant from $553 to $351.

¶ 44    Affirmed; cause remanded with directions.