NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230002-U

NO. 4-23-0002

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 29, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| LANCE LAMMAR COTTON, | ) | No. 21CF737 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | John Casey Costigan, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Zenoff and Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed defendant's conviction and 25-year sentence for aggravated battery of a child under the age of 13 years, concluding that (1) the trial court did not abuse its discretion by admitting other-crimes evidence to show defendant's propensity to commit domestic violence, (2) the evidence admitted at trial was sufficient to sustain defendant's conviction, (3) the trial court conducted an adequate inquiry into defendant's posttrial claim that his counsel was ineffective, and (4) the trial court did not err at sentencing by considering the nonstatutory aggravating factor that defendant held a position of trust in relation to the minor victim.

¶ 2    Defendant Lance Lammar Cotton was living in an apartment with his girlfriend Treshana Hosea and her two children by another father, 21-month-old boy L.E. and 3-year-old girl T.H., when, on February 19, 2020, an investigator for the Illinois Department of Children and Family Services (DCFS), accompanied by a police officer, entered the apartment and observed

that L.E. was small, malnourished, and lethargic. L.E. was taken from the apartment for medical treatment; imaging showed that he had subdural hematomas and multiple fractured bones. The evidence showed that L.E. was healthy and developmentally normal as of December 26, 2019. It is undisputed that (1) no one had access to L.E. during this two-month period except for defendant, Hosea, and T.H., (2) T.H. was not capable of inflicting L.E.'s injuries, and (3) L.E.'s injuries were not accidental or self-inflicted.

¶ 3    In July 2021, the State charged defendant with one count of aggravated battery of a child under the age of 13 years (720 ILCS 5/12-3.05(b)(1) (West 2020)) and one count of aggravated domestic battery (*id.* § 12-3.3(a)) for causing L.E.'s injuries. The trial court held a bench trial on the aggravated battery charge in September 2022, at which defendant and Hosea each testified that they had not caused L.E.'s injuries. The court convicted defendant and sentenced him to 25 years' imprisonment in the Illinois Department of Corrections.

¶ 4    On appeal, defendant argues that the trial court erred in several respects. We find no error and affirm.

¶ 5                    I. BACKGROUND

¶ 6    Defendant began dating Hosea in 2010, and the two had an on-and-off relationship until April 2021. In September 2015, defendant repeatedly struck Hosea on the face, causing injuries, including a laceration and a severely swollen eye. In 2016, defendant pleaded guilty to one count of aggravated battery (720 ILCS 5/12-3.05(a)(1) (West 2014)) and one count of domestic battery (*id.* § 12-3.2(a)(1)) based on this incident.

¶ 7    Hosea gave birth to T.H. in 2017 and L.E. in 2018; defendant moved into Hosea's apartment in early 2019. T.H. and L.E. spent Christmas Eve in 2019 with Hosea's mother Salina Grismore. After T.H. and L.E. returned to Hosea's apartment on December 26, 2019, Grismore

was no longer allowed into the apartment. In January 2020, Grismore called DCFS with concerns about her grandchildren's safety, asking DCFS to check on the family, especially L.E. A DCFS investigator made several unsuccessful attempts to visit the family before involving the police on February 19, 2020. L.E. was taken from the apartment for treatment; the medical evidence showed malnutrition, facial bruises, bilateral subdural hemorrhages, and multiple humerus and rib fractures, some of which were several weeks old. DCFS placed L.E. and T.H. in Grismore's custody immediately; L.E. eventually made a strong recovery.

¶ 8 When the police interviewed Hosea in February 2020, she stated that she did not think defendant had hit or injured L.E. because at the time, she "didn't think he was capable of doing that." When defendant was questioned, he told the police emphatically that he had never seen Hosea "[y]ank [the kids], hit them, snatch them, [or] do any foul action." He also said that he did not think Hosea had anything to do with L.E.'s injuries, that she was gentle with the children, and that she handled frustration well.

¶ 9 Hosea gave birth to defendant's first daughter Ri. C. on April 17, 2020; DCFS took protective custody of Ri. C. on April 19, 2020. Hosea gave birth to defendant's second daughter Ry. C. on April 2, 2021; DCFS took protective custody of Ry. C. on April 6, 2021. After leaving the hospital, Hosea broke up with defendant, contacted the police, and informed them that defendant had in fact caused L.E.'s injuries. She also alleged that defendant had repeatedly abused her while she was pregnant with Ry. C.

¶ 10 For his alleged abuse of Hosea, defendant was charged in April 2021 with aggravated domestic battery and domestic battery in McLean County case No. 21-CF-426. We take judicial notice of the McLean County court docket showing that the State entered a *nolle prosequi* in case No. 21-CF-426 on the same day that defendant was sentenced in the present

case. In July 2021, defendant was indicted for aggravated battery and aggravated domestic battery for his abuse of L.E.; Hosea was charged with child endangerment for failing to protect L.E.

¶ 11    Before defendant's trial, the State moved to introduce evidence of his prior abuse of Hosea pursuant to section 115-7.4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.4 (West 2022)), which provides that "evidence of the defendant's commission of another offense or offenses of domestic violence is admissible, and may be considered for its bearing on any matter to which it is relevant." Before admitting this other-crimes evidence, the court must "weigh[ ] the probative value of the evidence against undue prejudice to the defendant" and in doing so, "may consider: (1) the proximity in time to the charged or predicate offense; (2) the degree of factual similarity to the charged or predicate offense; or (3) other relevant facts and circumstances." *Id.* The State sought to introduce certified copies of defendant's 2016 convictions, Hosea's testimony regarding the incidents, and photographs of Hosea's injuries from 2015 and 2021.

¶ 12    The State argued that the probative value of the other-crimes evidence outweighed the risk of undue prejudice to defendant, even though five years had elapsed between the prior offenses and the charged offense and the victims had different relationships with defendant. The State asserted that the offenses nevertheless had sufficiently similar facts because the victims "are all still in the same family and their injuries were caused, the [S]tate is alleging, by this defendant using his hands or objects to cause blunt force to either [L.E.] or [Hosea]."

¶ 13    The trial court granted the State's motion in part, finding that defendant's abuse of Hosea in 2015 was sufficiently recent and bore "a high degree of factual similarity" to the charged offense. The court denied the State's motion to the extent the State sought to admit evidence of defendant's alleged abuse of Hosea in 2021, finding that the evidence would be cumulative and

that the absence of a prior finding of guilt might result in an improper "trial within a trial" on these allegations. The court therefore allowed the State to introduce evidence relating to the 2016 convictions, including the 2015 photographs of Hosea's injuries. The court informed defendant that he could raise a further objection at trial if he believed that the State had "presented sufficient evidence to establish propensity without the piling on that the court has indicated will not be allowed."

¶ 14        In September 2022, the trial court dismissed the aggravated domestic battery charge on the State's motion and proceeded to a bench trial on the aggravated battery charge. Hosea and defendant both testified; there is no dispute that the evidence apart from their testimony shows that one or both of them caused L.E.'s injuries. The other-crimes evidence was admitted without any further objection by defendant.

¶ 15        Hosea testified that she only saw defendant yell at L.E. once and never personally saw him physically abuse L.E. However, she believed that defendant had abused L.E. when she left the apartment to go shopping on January 21, 2020. Hosea acknowledged that she had previously denied that defendant was responsible for abusing L.E. "[b]ecause [she] didn't think he was capable of doing that and c[ame] to find out he was capable of doing that." She also testified that based on her conversations with her attorney, she believed her prosecution for child endangerment would be dismissed, but she was uncertain whether her attorney had been negotiating an agreement with the State and knew that there was no decision yet.

¶ 16        Defendant took the stand and accused Hosea of committing L.E.'s injuries. He testified that his prior statements to the police were false and that he had made them to protect Hosea. Although he acknowledged his past abuse of Hosea, he said, "I don't chastise kids. Me and [Hosea] might have got into it; but I don't touch kids, period."

¶ 17        In its closing argument, the State admitted that it could not establish how exactly L.E.'s injuries had been caused but cited defendant's prior abuse of Hosea, stating that "the Court can say because he's done it before it's likely that he did it again and combine that with the other circumstantial evidence here."

¶ 18        The trial court found defendant guilty. When explaining its findings of fact, the court stated that "[t]he Court, seeing [Hosea's] injuries, believes that the defendant does have the propensity to commit domestic violence" and "the propensity evidence weighs heavily in favor of the State." With respect to Hosea's and defendant's testimony that they had not hit or injured L.E., the court found that Hosea was credible and defendant was not credible. Although the court relied in part on the propensity evidence when making this determination, it also emphasized the fact that defendant was callous and indifferent toward L.E.; as corroborating evidence, the court pointed to police body camera footage showing defendant continuing to play a video game in the background while DCFS took L.E. into custody.

¶ 19        Because defendant had sent the court two *pro se* letters claiming that his counsel was ineffective, the trial court conducted a preliminary inquiry into whether independent counsel should be appointed to investigate defendant's claims pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). The court declined to appoint independent counsel, concluding that defendant had not shown possible neglect of the case before trial and that his remaining claims pertained to matters of trial strategy.

¶ 20        The trial court sentenced defendant to 25 years' imprisonment and denied his motion to reconsider his sentence.

¶ 21        This appeal followed.

¶ 22                                    II. ANALYSIS

¶ 23    Defendant argues that the trial court erred by (1) admitting evidence of his 2016 convictions for aggravated battery and domestic battery against Hosea to show that he had a propensity to commit domestic violence, (2) convicting him on the basis of insufficient evidence, (3) conducting an inadequate inquiry into his posttrial claim that his counsel was ineffective for failing to secure and introduce evidence that would purportedly impeach Hosea's testimony, and (4) relying on the aggravating factor that he held a position of trust in relation to L.E. We address each argument in turn.

¶ 24                      A. Admission of the Other-Crimes Evidence

¶ 25    Defendant argues that the trial court erred by admitting evidence of his 2016 convictions for aggravated battery and domestic battery against Hosea to show that he had a propensity to commit domestic violence. "[Reviewing courts] will not reverse the trial court's decision to admit other-crimes evidence unless we find that the court abused its discretion." *People v. Donoho*, 204 Ill. 2d 159, 182 (2003); see *People v. Dabbs*, 239 Ill. 2d 277, 290 (2010) ("[Section 115-7.4] does not abrogate *** the rule that the decision regarding admission of evidence is within the sound discretion of the trial court."). " 'An abuse of discretion has occurred when the trial court's decision is arbitrary, fanciful, or unreasonable or when no reasonable person would take the position adopted by the trial court.' " *People v. Watts*, 2022 IL App (4th) 210590, ¶ 42 (quoting *People v. Wilson*, 2015 IL App (4th) 130512, ¶ 75).

¶ 26    "Evidence regarding other crimes is generally inadmissible to demonstrate propensity to commit the charged crime (propensity). Such evidence is not considered irrelevant; instead, it is objectionable because such evidence has 'too much' probative value." *Donoho*, 204 Ill. 2d at 170 (quoting *People v. Manning*, 182 Ill. 2d 193, 213 (1998)). Section 115-7.4 of the Code (725 ILCS 5/115-7.4 (West 2022)) creates a narrow exception to this principle and allows

the admission of relevant evidence showing that the defendant has committed other domestic violence offenses. *Dabbs*, 239 Ill. 2d at 288. This statute reflects a legislative judgment that the admission of this evidence facilitates "the effective prosecution of crimes of domestic violence." *Id.* at 293.

¶ 27        Even when other-crimes evidence is admissible to show propensity, however, the defendant "is entitled to have his guilt or innocence evaluated solely on the basis of the charged crime" and not on the basis that he is "a bad person deserving punishment." *Donoho*, 204 Ill. 2d at 170; accord *People v. James*, 81 Cal. App. 4th 1343, 1357 (2000) ("The oft-cited observation that prior offense evidence 'proves too much' does not mean it is strong evidence of the charged offense."). As such, "to be admissible, other-crimes evidence must have 'some threshold similarity to the crime charged.' " *Donoho*, 204 Ill. 2d at 184 (quoting *People v. Bartall*, 98 Ill. 2d 294, 310 (1983)). This threshold is not high; it requires only " 'mere general areas of similarity.' " *Id.* (quoting *People v. Illgen*, 145 Ill. 2d 353, 373 (1991)); see *Dabbs*, 239 Ill. 2d at 293 ("An abuser may have a pattern of targeting victims who are vulnerable.").

¶ 28        Nevertheless, as defendant points out, the areas of similarity between his prior offenses and the charged offense cannot be as general as "domestic violence," because if all domestic violence offenses are sufficiently similar, the trial court would never need to evaluate "the degree of factual similarity" between those offenses under section 115-7.4(b)(2) (725 ILCS 5/115-7.4(b)(2) (West 2022)), thus rendering that part of the statute superfluous. See *Van Dyke v. White*, 2019 IL 121452, ¶ 46 ("No part of a statute should be rendered meaningless or superfluous."). In other words, section 115-7.4(b)(2) is a legislative acknowledgement that the effective prosecution of crimes of domestic violence still requires a case-by-case inquiry. See *Dabbs*, 239 Ill. 2d at 290-91. After all, evidence that the defendant has previously committed

domestic violence, completely untethered to the facts of the charged offense, is nothing more than evidence that he is a domestic abuser, *i.e.*, "a bad person deserving punishment." *Donoho*, 204 Ill. 2d at 170.

¶ 29    In the present case, we find it challenging to credit the trial court's conclusion that defendant's prior offenses and the charged offense bore "a high degree of factual similarity." In fact, the differences may well outweigh the similarities. It is true that both offenses involved the infliction of severe blunt force injuries to a member of the household while inside the walls of the residence. However, the victims were not the same. *Contra People v. Adams*, 2023 IL App (2d) 220061, ¶ 81 (same victim); *People v. Irons*, 2017 IL App (4th) 150295, ¶ 27 (same victim). The two victims had different relationships with defendant. *Contra People v. Smith*, 406 Ill. App. 3d 747, 754 (2010) (prior victim was the defendant's other granddaughter); *People v. Potts*, 2021 IL App (1st) 161219, ¶ 203 (prior victims were other intimate partners of the defendant). There was nothing to indicate that the offenses resulted from a similar motivation. *Contra People v. Kelley*, 2019 IL App (4th) 160598, ¶ 82 (both prior victims were female sexual partners who had taken the defendant's property); *People v. Heller*, 2017 IL App (4th) 140658, ¶ 48 (the defendant believed that both prior victims had been involved with other romantic partners), *abrogated on other grounds by People v. Veach*, 2017 IL 120649. While some of L.E.'s injuries were similar to Hosea's injuries, the State could not establish that L.E.'s injuries resulted from punching, as Hosea's had. *Contra People v. Currie*, 2022 IL App (4th) 210598, ¶ 18 (both offenses involved strangulation).

¶ 30    Were the predicate for the introduction of the other-crimes evidence at issue solely a matter of similarity, the trial court's ruling would be difficult to sustain. The test for admission, however, involves more than similarity. The statute provides generally that, in prosecutions for

crimes of domestic violence, the defendant's "commission of another offense or offenses of domestic violence is admissible, and may be considered for its bearing on any matter to which it is relevant." 725 ILCS 5/115-7.4(a) (West 2022). Similarity is one factor the court "may consider" when weighing the probative value of the evidence against "undue prejudice." *Id.* § 115-7.4(b). The court may also consider the proximity in time between the offenses and "other relevant facts and circumstances" that need not be admissible as evidence themselves. *Id.*; see Ill. R. Evid. 104(a) (eff. Jan. 1, 2011) (providing that when the trial court determines whether evidence is admissible, "the court is not bound by the rules of evidence except those with respect to privileges"). Moreover, these three enumerated factors are "in addition to any other factors the court might ordinarily consider" when "balanc[ing] probative value with the risk of undue prejudice." *Dabbs*, 239 Ill. 2d at 290-91.

¶ 31    The trial court's analysis reflected a broad consideration of these factors. For instance, the court reviewed photographs tending to show that defendant severely beat Hosea just days before she gave birth to his own daughter Ry. C. in 2021. This abuse of Hosea could easily have resulted in serious injuries to Ry. C. or in complications with Hosea's delivery resulting in permanent harm to Ry. C. As opposed to defendant's abuse of Hosea in 2015, defendant's alleged abuse of a pregnant Hosea in 2021 was much closer in time and much more probative of a propensity to abuse a 21-month-old infant; it may well have been appropriate for the court to admit the 2021 photographs under section 115-7.4. Even though the facts and circumstances underlying Hosea's 2021 injuries were not admitted into evidence at trial, they were nevertheless relevant to the court's pretrial assessment of the probative value and undue prejudice flowing from the evidence of the less similar and less recent abuse in 2015. See 725 ILCS 5/115-7.4(b) (West 2022).

¶ 32 Ultimately, we cannot conclude that it was an abuse of discretion for the trial court to find that the probative value of the evidence of defendant's prior act of domestic violence was not outweighed by its prejudicial effect. The record suggests that only two people—defendant and Hosea—were in a position to have inflicted the terrible injuries suffered by L.E. The court did not abuse its discretion in determining that defendant's prior violent acts in the household were probative and not outweighed by their prejudicial effect. " 'Undue prejudice' within the meaning of section 115-7.4(b) necessarily is prejudice other than that resulting from proof of the defendant's propensity to commit domestic violence, because the very purpose of section 115-7.4 is to lift the common-law ban on that particular kind of propensity evidence." *Kelley*, 2019 IL App (4th) 160598, ¶ 77. The court's decision is consistent with the statute's purpose: to utilize prior acts of domestic violence to show propensity in cases where proof can be elusive.

¶ 33                                    B. Sufficiency of the Evidence

¶ 34 Defendant argues that the State's evidence against him was insufficient to sustain his conviction. "The due process clause of the fourteenth amendment to the United States Constitution [(U.S. Const., amend. XIV, § 1)] safeguards an accused from conviction in state court except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged." *People v. Brown*, 2013 IL 114196, ¶ 48 (citing *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979)). When considering a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. *Id.* (citing *Jackson*, 443 U.S. at 315-16). We allow all reasonable inferences in favor of the State and will not reverse unless the evidence is so unsatisfactory or improbable that it creates a reasonable doubt as to the defendant's guilt. *People v. Givens*, 237 Ill. 2d 311, 334 (2010). "This same standard of review

applies regardless of whether the evidence is direct or circumstantial [citation], and regardless of whether the defendant receives a bench or jury trial [citation]." *People v. Cooper*, 194 Ill. 2d 419, 431 (2000).

¶ 35     At bottom, defendant's trial was a contest of credibility between two witnesses whose testimony contradicted their prior statements to the police; a rational trier of fact could conclude that Hosea was credible and defendant was not credible. See *People v. Corral*, 2019 IL App (1st) 171501, ¶ 85 ("The trier of fact must judge how flaws in parts of a witness's testimony, including inconsistencies with prior statements, affect the credibility of the whole."); *People v. Gray*, 2017 IL 120958, ¶ 36 ("A conviction will not be reversed simply because the evidence is contradictory or because the defendant claims that a witness was not credible.").

¶ 36     Defendant's argument relies heavily on Hosea's testimony that she was with her children "24/7" during the relevant period and never personally saw defendant abuse L.E. According to defendant, this testimony is consistent with his own testimony that he never abused L.E., so the trial court could only have convicted him by disbelieving both witnesses and speculating as to what happened. Although we agree with the principle that "[n]ormally [a witness's] discredited testimony is not considered a sufficient basis for drawing a contrary conclusion" (*Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984)), we find that defendant's characterization of Hosea's testimony is inconsistent with our obligation to view her testimony in the light most favorable to the State.

¶ 37     Specifically, Hosea did not testify that L.E. *never left her sight* throughout the entire two-month period; indeed, she acknowledged that she left the apartment to go shopping on January 21, 2020, leaving L.E. alone with defendant and T.H. Furthermore, Hosea testified that L.E. had his own bedroom, and body camera footage of the apartment confirmed that this back bedroom

could not be seen from the main living area or T.H.'s bedroom. Despite testifying that she never *saw* defendant abuse L.E., Hosea also testified, "I felt like I should have never trusted [defendant] around my son knowing that he was doing what he was doing to him." A rational trier of fact could infer from Hosea's overall testimony that she believed defendant had abused L.E., even though she had never personally seen it happen.

¶ 38 Furthermore, Hosea's testimony that she did not cause L.E.'s injuries, when found credible and coupled with the undisputed evidence that defendant was the only other person with the opportunity and ability to have done so, was sufficient to identify defendant as the person responsible. See *People v. Dowaliby*, 221 Ill. App. 3d 788, 797 (1991) (explaining that circumstantial evidence of opportunity is sufficient to sustain a conviction when the State proves that no one but the defendant had the opportunity to commit the offense). The evidence that defendant had a propensity to commit domestic violence, which we have found was properly admitted, bolstered these conclusions. See *Donoho*, 204 Ill. 2d at 182 (explaining that other-crimes evidence, when properly admitted, may be used by the finder of fact to resolve a credibility contest).

¶ 39 Accordingly, we conclude that the evidence in this case, when viewed in the light most favorable to the State, was sufficient to convict defendant.

¶ 40 C. Adequacy of the *Krankel* Inquiry

¶ 41 Defendant argues that the trial court failed to conduct an adequate inquiry into his *pro se* claim of ineffective assistance of counsel after trial. See *Krankel*, 102 Ill. 2d 181. "The sole question in a *Krankel* inquiry is whether to appoint independent counsel to represent the defendant on his *pro se* ineffective assistance claims." *People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 12. However, "the trial court need not appoint counsel if the defendant's claims are without merit or

pertain solely to matters of trial strategy." *Id.* The supreme court has stressed that even in a preliminary *Krankel* inquiry, "a trial court can certainly reach not only the factual basis, but also the overall merits of an ineffective assistance claim to decline appointing new counsel for further hearing." *People v. Roddis*, 2020 IL 124352, ¶ 64. We consider *de novo* whether the trial court's preliminary *Krankel* inquiry was adequate. *Id.* ¶ 33.

¶ 42        Defendant argues that at the *Krankel* inquiry, the trial court failed to ask him about a video and text messages referenced in his *pro se* letters and thus failed to determine whether counsel conducted a reasonable investigation into this potential evidence. However, the court is not limited to considering what is discussed at the *Krankel* inquiry alone; "the trial court is permitted to make its determination based on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations." *People v. Ayres*, 2017 IL 120071, ¶ 12.

¶ 43        The record shows that defendant informed the trial court at an earlier proceeding that he had asked counsel to subpoena "April 9th, 2021 Kroger's footage of [defendant] being hit by a car *** by [Hosea] and her stepfather" and "text messages between [defendant] and *** Hosea *** on April 9th." Defendant told the court that his counsel "sa[id] that it has no connection with the allegations right here," although defendant believed that it did. This record does not reflect a failure to investigate but rather a considered decision that further investigation was unnecessary. See *Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."). Because defendant's claim regarding this potential evidence failed to " 'show possible neglect of the case,' " appointment of independent counsel to investigate the claim was unnecessary. *People v. Jolly*, 2014 IL 117142, ¶ 29 (quoting *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003)).

¶ 44 Alternatively, defendant argues that the trial court should have inquired into the actual substance of this potential evidence to evaluate his claim of ineffectiveness, because counsel may have been ineffective for failing to introduce "obviously useful" evidence to impeach Hosea's testimony. See *People v. Vera*, 277 Ill. App. 3d 130, 140 (1995). However, defendant described this evidence during his allocution at sentencing, shortly after the *Krankel* inquiry, enabling us to consider whether the appointment of independent counsel would have been warranted. See *People v. Smith*, 2013 IL App (4th) 110220, ¶ 21 ("We may affirm on any basis supported by the record if the judgment is correct.").

¶ 45 According to defendant, the video showed Hosea's stepfather hitting defendant with a Cadillac CTS in a Kroger parking lot on the morning of April 9, 2021. Even assuming this incident reflected misconduct by Hosea herself, it would not have been admissible to impeach her testimony; "specific-act impeachment is prohibited in Illinois." *People v. Santos*, 211 Ill. 2d 395, 404 (2004); see *Podolsky & Associates L.P. v. Discipio*, 297 Ill. App. 3d 1014, 1026 (1998) ("In Illinois a witness's credibility may not be impeached by inquiry into specific acts of misconduct which have not led to a criminal conviction."). Because the video could not have been admitted as impeachment evidence, much less obviously useful impeachment evidence, defense counsel could not have been ineffective for failing to introduce the video. See *Weaver v. Nicholson*, 892 F.3d 878, 885 (7th Cir. 2018) (finding that counsel was not ineffective for failing to call a witness whose testimony would have been inadmissible hearsay).

¶ 46 With respect to the text messages that defendant and Hosea exchanged on April 9, 2021, defendant provided the following description:

> "I literally have text messages of [Hosea] telling me to come and get her. If I harmed her child, why is she sending me pictures of [L.E.] and [T.H.] in their new

bathtub on April 9 if I harmed her child. Why didn't she reach out to the police on April 3rd, 4th, 5th, 6th. She left with the caseworker on that day. Why, because me and her got into it because my daughter was being taken by DCFS. I said if I lose my custody of my kids, I am beating your a\*\*\*. That is what I told her. And she got scared and she left on April 6th. Why didn't she call the police on April 6th, April 7th, April 8th, April 9th if I harmed her child and she was afraid of me."

¶ 47 It is far from clear just how these text messages would have undermined Hosea's credibility, but by defendant's own admission, they were closely related to a threat that he would attack her. Not only was defendant on trial for aggravated battery, his abuse of Hosea in 2015 had already been found admissible to establish his propensity to commit domestic violence. If defense counsel had introduced these text messages when cross-examining Hosea, it might have opened the door for the State to further bolster its case by introducing evidence of defendant's abuse of Hosea in 2021, completely undoing defense counsel's successful challenge to the admission of that evidence under section 115-7.4 of the Code. See *People v. Hinthorn*, 2019 IL App (4th) 160818, ¶ 86 (upholding the introduction of other-crimes evidence as curative of prejudicial answers elicited by the defendant's counsel on cross-examination of the victim). Despite defendant's claim of ineffectiveness, it is actually sound trial strategy for defense counsel to "*avoid*, when possible, the admission of incriminating statements, harmful opinions, and prejudicial facts." (Emphasis added.) *People v. Moore*, 279 Ill. App. 3d 152, 159 (1996).

¶ 48 Moreover, this was not a case where defendant was in serious need of evidence to undermine Hosea's credibility; the evidence already showed that she had made two prior inconsistent statements to the police, was the only person besides defendant who could have been responsible for L.E.'s life-threatening injuries, and had a pending prosecution for endangering L.E.

that might have been dismissed if her testimony at defendant's trial was helpful to the State. Defendant's counsel reasonably focused on these critical facts to show that Hosea's version of events was contradictory and self-serving. See *United States v. Harris*, 394 F.3d 543, 556 (7th Cir. 2005) (noting that impeachment on trivial grounds can distract the finder of fact from impeachment on stronger grounds).

¶ 49　　Assuming for the sake of argument that the text messages between defendant and Hosea would have constituted proper impeachment evidence, their introduction could seriously have undermined defendant's case in exchange for little to no benefit, so counsel's choice to not introduce them was reasonable trial strategy. See *Roddis*, 2020 IL 124352, ¶ 35 ("If the court determines that the claim *** pertains only to matters of trial strategy, then the court need not appoint new counsel."). It bears emphasizing that a finder of fact may find a witness credible even in the face of extremely effective cross-examination; defendant's belief that the finder of fact reached the wrong conclusion does not mean that his counsel's performance was deficient.

¶ 50　　Accordingly, we find that the trial court did not err by declining to appoint independent counsel to investigate defendant's posttrial claim that his counsel was ineffective.

¶ 51　　　　　D. Consideration of a Nonstatutory Aggravating Factor

¶ 52　　At sentencing, the trial court explained the aggravating factors it relied on in crafting its sentence. In addition to mentioning other factors, the court stated: "The Court believes that the defendant was in a position of trust over this minor victim in terms of the household, that was there. And the Court has considered all of that."

¶ 53　　Defendant argues that the trial court erred because the statutory aggravating factor that "the defendant held a position of trust or supervision *** in relation to a victim under 18 years of age" applies only to a list of enumerated offenses that does not include the offense for which he

was convicted. 730 ILCS 5/5-5-3.2(a)(14) (West 2022). Therefore, according to defendant, the court considered an "improper aggravating factor" when imposing his sentence. We consider *de novo* whether the trial court relied on an improper sentencing factor. *People v. Larson*, 2022 IL App (3d) 190482, ¶ 29. The State concedes, unwisely, that the trial court erred by relying on an improper factor, although the State argues that the error does not warrant reversal. However, we are not bound by the State's concession to an erroneous legal conclusion. See *Pasic v. Department of Financial & Professional Regulation*, 2022 IL App (1st) 220076, ¶ 36 ("A party may concede a question of law, but that concession is not binding on this court.").

¶ 54        Defendant and the State are both incorrect that an aggravating factor constitutes an improper sentencing factor simply because it does not appear on the list of statutory aggravating factors that "*shall* be accorded weight." (Emphasis added.) 730 ILCS 5/5-5-3.2(a) (West 2022). On the contrary, it is well established that "the trial judge is *not* limited to considering statutory aggravating factors, and he *may* consider any fact which would tend to aggravate the offense." (Emphases added.) *People v. Helm*, 282 Ill. App. 3d 32, 34 (1996). However, the trial court's consideration of a nonstatutory aggravating factor must be based on relevant and reliable evidence. *People v. Joe*, 207 Ill. App. 3d 1079, 1086 (1991).

¶ 55        Here, there is no genuine dispute that defendant held a position of trust and supervision in relation to L.E.; the evidence at trial established that defendant was the only person in the apartment to supervise L.E. and T.H. when Hosea was absent. *Contra People v. Ross*, 303 Ill. App. 3d 966, 985 (1999) (finding that the trial court erred in applying the aggravating factor of *rival* gang membership when the only relevant evidence showed that the defendant and victim had a *common* gang affiliation). At sentencing, the trial court was permitted to consider that Hosea placed her trust in defendant, given that defendant betrayed that trust by severely abusing her son,

even though the court was not obligated to consider this fact under the sentencing statute. See *Helm*, 282 Ill. App. 3d at 34-35 (collecting cases where the vulnerability of the victim was used as an aggravating factor).

¶ 56　　　　In support of his argument, defendant cites several cases in which the trial court improperly relied on a fact inherent in the offense as a factor in aggravation, resulting in a so-called "double enhancement." See, *e.g.*, *Larson*, 2022 IL App (3d) 190482, ¶ 30. Here, there is no double enhancement problem because the offense of aggravated battery of a child under the age of 13 years says nothing about a relationship between the defendant and the minor victim. 720 ILCS 5/12-3.05(b)(1) (West 2020). This is also not a case in which the trial court improperly used a statutory mitigating factor as an aggravating factor. See *People v. Heider*, 231 Ill. 2d 1, 20 (2008) ("Given that the legislature chose to include mental retardation as a mitigating factor *** but did not choose to include it as an aggravating factor ***, we consider it beyond dispute that the use of mental retardation as an aggravating factor in sentencing is improper."). Finally, the trial court did not improperly penalize defendant for exercising a constitutional right, such as the right to call witnesses on his behalf. See *People v. McAfee*, 332 Ill. App. 3d 1091, 1097 (2002) (finding that the trial court erred by "consider[ing] as an aggravating factor that [the court] believed that a witness testified falsely on the defendant's behalf").

¶ 57　　　　Because the trial court did not err in applying this nonstatutory aggravating factor, we need not address plain error or defendant's claim that his counsel was ineffective for failing to challenge the allegedly improper sentencing factor before the court. See *People v. Merriweather*, 2022 IL App (4th) 210498, ¶ 37 ("Since we have found no error, we need not address plain error.").

¶ 58　　　　　　　　　　　　III. CONCLUSION

¶ 59　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 60          Affirmed.